No. 14,979.

Wierman et al., doing business as Summit Grain Company et al. *v.* Tunnell et al.
(120 P. [2d] 638)

Decided December 1, 1941. Rehearing denied January 5, 1942.

Mr. LOWELL WHITE, Mr. WILLIAM K. RIS, for plaintiffs in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. MORRY M. STERLING, Assistant, Mr. LANSFORD F. BUTLER, for defendants in error.

*In Department.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

ROY J. TUNNELL, defendant in error, presented a claim for compensation under the Workmen's Compensation Act, for personal injuries resulting from an accident arising out of and in the course of his employment June 10, 1938. Upon the date mentioned he was struck by some sacks of grain which fell from a hand-truck used in his employer's warehouse. Thereafter he was in a hospital for about 18 days, where "head traction" was immediately applied, followed by the installation of a cast. X-ray plates disclosed "a small spicule of bone fractured off the anterior superior surface of the body of the seventh cervical vertebra." After approximately ninety days he returned to work for the same employer. Early in July, 1940, the employer's warehouse was destroyed by fire, and, this part of its business being discontinued, claimant was discharged. A few days later he obtained employment at the Eagle Flour Mills in

Denver. In November, 1938, he filed a claim for compensation with the Industrial Commission, describing his disability as a "stiff neck and sleepiness in one foot and both hands." At the subsequent hearing the evidence disclosed no permanent disability, but did show that he, as a working unit, had an industrial disability of five per cent, and that this disability would not continue beyond six or twelve months. The commission's award, December 5, 1938, upon which no petition for review was filed, allowed claimant's medical and hospital bills and compensation for total temporary disability up to the day of his return to work, plus temporary partial disability for one week thereafter. October 7, 1940, upon petition of claimant, the commission ordered the case reopened for the purpose of determining whether or not there was a changed condition in claimant's disability. After a full hearing, in which five medical experts testified as to his condition, the commission, November 30, 1940, found that, "Evidence taken before the referee on November 16, 1938, indicated that claimant sustained no permanent partial disability. However, claimant's condition failed to improve, but on the contrary became worse and the Commission now finds that claimant has suffered a permanent partial disability equivalent to 5% as a working unit directly attributable to this accident." Upon this finding the commission awarded claimant $773.50 for permanent partial disability, to be paid at the rate of $12.50 per week. The trial court affirmed the award.

While counsel for plaintiffs in error set out 24 specification of points, only five grounds for reversal are urged in their brief. These are as follows:

1. "That there is no change in the condition of claimant from the time of the hearing in November 1938 to the time of the hearing in November 1940, and that"

2. "The Commission has set aside a final judgment or award without sufficient grounds or reasons according to law, and"

3. "That it is clear that the claimant was not in November 1940 disabled in any wise as a result of the accident of June 10, 1938, and that"

4. "The claimant has not sustained his burden of proving that the alleged injuries and disabilities now claimed were proximately caused by the accident and injury of June 1938, and that"

5. "The amount awarded is excessive by reason of the mistake of age made by the Commission."

Counsel for plaintiffs in error vigorously contend that there is no competent evidence showing a change in claimant's physical condition between November, 1938, and November, 1940, such as to satisfy the requirements of section 389, chapter 97, '35 C.S.A., and therefore, in granting the award here under consideration, the commission exceeded its powers. A careful perusal of the entire record leads us to a different conclusion. A portion of claimant's testimony given at a hearing November 18, 1940, is as follows: "Q Since the last hearing before this Commission, in November, 1938, what has been your physical condition? A Well, both my hands are just kind of numb, and both fingers, right through there on both fingers, the back of my hand, clean up to my elbows, just feels like somebody is sticking me with needles and pins, in both hands. My right eye was jerked back, and every once in a while it just takes a spasm. Maybe tomorrow it will do it for a day or two, and then maybe it won't do it for a while. And there is a sore spot right there in the back of my neck, see, which keeps me from swinging my head either way, you see. I just get about so far and then it starts paining me. Q What effect have these symptoms had upon your ability to work and your ability to get about as before the accident? A State that again, Mr. Butler. Q What effect have these symptoms had on your ability to work? A I can't do the work that I done before the accident. I can't do any heavy lifting or throw anything up high over my head. It bothers me if I do it day in and day

out. Q It bothers you more than it did before. A It bothers me more than it did before, it even bothers me more than it did before. Q Prior to your accident of June 10, 1938, did you have any trouble doing heavy work? A No, I could do any kind of work before then anywhere. Q Since the last hearing, in December, 1938, what type of work have you done? A Since then? Q Yes. A Well, I went back to work on that same job. Q With whom? A With the Summit. Q Who is your foreman at the Summit? A Earl Spurrier. Q Is he present today? A Yes sir. Q What type of work did you continue to do? A I started in doing regular work, but I couldn't keep it up; so then I had to do lighter work and he put me on oiling and cleaning up the place and sewing sacks and things like that, where there was not so much working. Q Did you mention any complaints about your condition to your boss? A Sure I did. I complained to him any time it bothered me. Q State whether or not at the present time your condition is the same, worse, or better than it was in November, 1938? A It is worse, much worse."

This evidence was substantiated by one Earl Spurrier, who was claimant's superior at the employer's warehouse until the early part of July, 1940. Two medical experts were called as witnesses on behalf of claimant, who testified from a neurological point of view, and another, who specializes in orthopedic surgery. The first two testified that from a neurological standpoint claimant now was permanently disabled at least ten per cent. This testimony was disputed by two neurologists testifying in behalf of the employer. The orthopedist testified as follows: "Q What is your opinion as to his present condition resulting from said accident with reference to disability? A I felt he had some disability in the cervical spine as evidenced by this limitation of motion and it was borne out by his complaint of pain and stiffness which I attributed to a fracture which was disclosed by the X-ray, fracture of the anterior-superior surface

of the body of the seventh cervical vertebra. I thought he had a disability of five per cent as a result of this injury to the bony structure. Q That would be permanent? A I thought so, yes. Q And as a working unit? A Yes, sir."

■ This testimony was not disputed. The commission could reasonably infer from the evidence of these medical experts, and that given by the lay witnesses, that there had been a change in claimant's physical condition between November, 1938, and November, 1940, and also could reasonably conclude that what it formerly believed to be a temporary disability had become a permanent partial disability. The contention of counsel for plaintiffs in error, that this testimony of the medical experts and lay witnesses was incompetent, is without merit. The weight to be given to such testimony was a matter for the commission, the members of which, because of their experience in this field, have developed expert knowledge of the problems involved, which makes them competent to evaluate evidence in cases of this character. That in this field, medical science to a large extent still is not exact, is recognized and given due consideration by fact-finding bodies, such as our Industrial Commission. We do not attempt to detail all of the testimony adduced, but we find that there was a conflict in the evidence on this issue, consequently the determination thereof was solely for the commission.

■ We cannot accept the statement of counsel for plaintiffs in error that the evidence conclusively shows that claimant at this time is performing as strenuous physical labor, if not more strenuous, than that in which he was engaged prior to his accident, and that he is in no wise disabled from doing that work. In addition to the evidence to which counsel call our attention, there is testimony that the work which claimant has been performing since his accident is about twenty-five per cent lighter than that which he was doing prior thereto. They also assert that there is no evidence showing industrial

disability, basing this assertion primarily upon the fact that the wages earned by claimant subsequent to the accident are approximately on the same level as those he was receiving previously. We do not agree with this assertion. In any event, the term "disability" is not restricted to such disability as impairs present earning power. *London Guarantee & Accident Co. v. Industrial Commission,* 70 Colo. 256, 199 Pac. 962. Other factors enter into this problem, such as the substantial impairment of physical efficiency, which normally produces a loss of earning power.

The commission was warranted in finding that "claimant's condition failed to improve, but, on the contrary, became worse." This disposes of grounds 1 and 2 urged by counsel for plaintiffs in error. The third and fourth contentions are related to the same issue, and pose the question as to whether the permanent partial disability of claimant resulted from the accident of June 10, 1938.

█ In the fourth contention it is urged that claimant did not sustain the burden of establishing that the disability he now alleges was proximately caused by the accident of June, 1938. Whether this burden was sustained is a question of fact the determination of which was solely within the province of the commission. The record discloses that there was competent evidence from which proximate cause could be found.

█ Counsel for plaintiffs in error further contend that the commission's award is excessive, in that the award on the finding of permanent partial disability of claimant should have been based upon the age of 48, instead of 46, years. The record discloses that claimant reached the age of 46 years October 28, 1938. "Where an accident causes injury resulting in permanent partial disability * * * , the injured employee shall be deemed to be permanently disabled from the time he is so declared by the commission and from said time shall be entitled to compensation for permanent partial disability in addition to any compensation theretofore al-

lowed. * * * ." Section 357, chapter 97, '35 C.S.A. This section is controlling of the problem before us. The commission declared claimant to be permanently partially disabled November 30, 1940, at which time he was 48 years of age, and this is the criterion which furnishes the basis upon which his life expectancy should be computed.

In view of our conclusions, other contentions advanced by the parties require no further consideration.

The judgment sustaining the award of the commission as related to the determination of permanent partial disability is affirmed, but as to the amount to be awarded therefor, the cause is remanded with directions that a sum be fixed consistent with claimant's age of 48 years, rather than that of 46 years used by the commission in its determination.

Mr. Chief Justice Young, Mr. Justice Bakke and Mr. Justice Hilliard concur.