## No. 23586.

ROBERT B. WOMACK *v.* INDUSTRIAL COMMISSION OF COLORADO, BOVEE AND CRAIL CONSTRUCTION COMPANY, AND CONTINENTAL CASUALTY COMPANY.

(451 P.2d 761)

Decided March 10, 1969.     Rehearing denied April 1, 1969.

PHILIP HORNBEIN, JR., ROY O. GOLDIN, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE,

Deputy, PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

*In Department.*

Opinion by MR. JUSTICE HODGES.

THIS is a workmen's compensation case. Plaintiff in error Womack will be referred to as claimant and defendants in error as Commission, employer, and insurer, respectively. Claimant brings this writ of error from the judgment of the district court, which affirmed the Commission's order that claimant has a permanent partial disability of 15% as a working unit.

In substance, the claimant contends that the uncontroverted evidence before the Commission establishes that the claimant is permanently and totally disabled, and therefore the lower court's affirmance of the Commission's award is erroneous. The claimant further argues that the Commission's findings are inadequate because there are no specific evidentiary findings upon which to premise a 15% permanent partial disability as a working unit. For this reason, it is also contended that the affirmance of the Commission's award is error.

The record before the Commission reflects a situation of some confusion and complexity. However, only those details concerning the hearings, procedures and facts which are demonstrative of the issue to be resolved will be herein discussed. In essence, it is our view that the Commission because of either no specific findings or inadequate findings has not made an award which can be substantiated. We therefore hold that the judgment of the trial court must be reversed and that this matter be remanded to the Commission for fulfillment of its fact-finding function, and in the discretion

of the Commission, for a further hearing for this purpose.

## The Injury

On April 21, 1961, claimant sustained a back injury in the course of his employment as a pipefitter. In 1961, he was hospitalized three times for treatment of his injury, and in June 1962, he was hospitalized for performance of a laminectomy. Covering the period from June 1962 to November 1966, the record contains 11 medical reports from 9 doctors concerning claimant's condition as a result of his work injury. The reports disclose that in 1965 claimant was using crutches or a cane, and that in 1966 he had some atrophy of his left leg and foot. In August 1965, Dr. Freed, a neurosurgeon, reported that "he [the claimant] appears to be totally disabled from an industrial standpoint, due to functional nervous illness."

In December 1965, claimant was examined by two psychiatrists who reported that claimant had made "an existential adaptation to his present condition" and had sustained a post-traumatic neurosis with 10% disability. Although the treating psychiatrist reported that claimant "was as cooperative as he could be," psychotherapy for claimant was discontinued because the doctor found that further treatment would be useless.

In August 1966, Dr. Barnard, an orthopedist to whom the Commission had referred claimant for examination, found that claimant had an unstable back due to an incomplete fusion of his sacro-lumbar joint, and that his psychological attitude was not conducive to improvement. The doctor concluded that "He [claimant] is essentially 100% disabled for doing all kinds of work." On December 21, 1966, claimant's last hearing before a referee was held for the purpose of medical evaluation. Dr. Barnard was the sole medical witness, and he assessed claimant's physical disability, exclusive of his leg disability, at 20% as a working unit in his back. The doctor further stated:

"I don't think the condition he is in now — I don't think

he can do any manual work. I mean he might do work sitting around, and some other types of work, but I don't think he could get out and work continuously and earn a living at manual work."

Dr. Barnard testified that further surgery might improve claimant's condition, but declared that he would undertake the surgery only upon condition that claimant's attitude toward further treatment could be changed to one of hope and confidence. The employer and insurer thereupon offered to pay for the additional surgery upon condition that 'Dr. Barnard would undertake to perform it. The claimant refused the surgery thus conditionally proferred upon the ground of the "uncertainty of, and disagreement among" the doctors who had examined him.

*Workmen's Compensation Benefits Awarded to Claimant*

Claimant received temporary total disability payments from April 22, 1961 to February 6, 1963. On February 28, 1963, employer admitted special liability to claimant for permanent partial disability of $7\frac{1}{2}\%$ as a working unit. On August 5, 1963, claimant filed a petition to reopen his claim, upon the ground that he had a permanent total disability. On October 14, 1965, a hearing was held before referee Thomas E. Kelly. Testimony of claimant, together with the testimony of, and films offered by, private investigators, hired for insurer and employer, were received into evidence. At this hearing, referee Kelly found that claimant's condition had undergone such a serious change since the previous award of $7\frac{1}{2}\%$ that the Commission should make a further medical evaluation of the case. On March 7, 1966, a hearing for the purpose of medical testimony was held before referee Kelly, and the sole witness was a psychiatrist, who testified that claimant had a 10% psychiatric disability for any kind of work. The death of referee Kelly occurred before he had made his findings.

*The Findings*

On December 21, 1966, a hearing for the medical testimony of Dr. Barnard was held before referee James H.

Murphy. The films taken by private investigators employed on behalf of employer and insurer were not shown during the hearing but apparently were thereafter viewed privately by the referee with the consent of the parties. On March 29, 1967, referee Murphy entered a Supplemental Order, finding that claimant has a permanent partial disability of 15% as a working unit, or an increase of 7½% over the previous award, directly attributable to claimant's work injury. The referee's finding reads *in toto* as follows:

"The Referee, having reviewed the entire file and the testimony, finds that the Petition to Reopen should be granted on the grounds that the claimant's condition has worsened since the last adjudication at which time he received an award of 7½% as a working unit. The Referee further finds that the claimant now has permanent partial disability in the amount of 15% as a working unit, or an increase of 7½% over the previous award and that this is directly attributable to his admitted accident of April 21, 1961. Claimant reached maximum improvement as of August 5, 1965."

Claimant filed a petition for review, which the referee considered and then issued a Supplemental Order, dated August 10, 1967, which affirmed his prior Supplemental Order, but made the following additional finding:

"Referee, having again reviewed the entire file, finds that the only evidence on which a finding of permanent total disability could be made would be from the claimant's own testimony that he is not able to return to his own trade or do anything else in the labor field. To rebut this, the respondents had motion pictures taken of the claimant without his knowledge which show him performing most of the activities and the movements which he testified he was unable to do. The medical opinions are varied and in conflict. They all agree that the claimant's disability is a composite of organic and psychiatric, with more emphasis on the psychiatric aspect since the greater portion of their findings are based on the claim-

ant's suggestive complaints which are entirely functional in nature.

Dr. Barnard, a specialist in orthopedics, did recommend further surgery which he felt might improve the claimant's condition. The respondents tendered this surgery and the claimant, after due consideration, refused to accept. A review of the psychiatric evidence and testimony of two specialists in that field shows a psychiatric disability, temporary in nature, of 10 percent."

The Commission affirmed the referee's Supplemental Order, and thereafter the district court affirmed this order.

■■ This court has repeatedly declared that the findings of fact made by the Commission, which are supported by evidence, are conclusive upon review. *United Utilities & Spec. Corp. v. Industrial Commission,* 160 Colo. 518, 418 P.2d 896, *Sharmar Nursing Home v. Industrial Commission,* 160 Colo. 197, 416 P.2d 161, *Bennetts' Claimants v. Durango Furniture Mart,* 136 Colo. 529, 319 P.2d 494, and *Metz Lumber Co. v. Taylor,* 134 Colo. 249, 302 P.2d 521 are illustrative of the many cases stating this rule. And the conclusiveness of the Commission's fact-finding is fully applicable to cases, such as the instant case, involving the extent of disability. *Colorado Fuel & Iron Corp. v. Industrial Commission,* 151 Colo. 18, 370 P.2d 153, *Anderson v. Dutch Maid Bakeries,* 106 Colo. 201, 102 P.2d 740, *Poole v. Industrial Commission,* 94 Colo. 163, 28 P.2d 809, *Colorado Fuel & Iron Co. v. Industrial Commission,* 85 Colo. 237, 275 P. 910, *Employers Mutual Insurance Co. v. Industrial Commission,* 83 Colo. 315, 265 P. 99, *Globe Indemnity Co. v. Industrial Commission,* 67 Colo. 526, 186 P. 522.

However, the Commission has not made adequate findings of fact in this case to afford a basis for review. Insufficiency of fact-finding has been a persistently recurring problem for this court in cases involving the state Industrial Commission. Almost 50 years ago, we declared, "It is the duty of the Commission to make

sufficiently detailed findings of fact so that the courts can determine whether the order or award is supported by the facts." *Prouse v. Industrial Commission,* 69 Colo. 382, 194 P. 625. Time has neither mitigated the duty, nor alleviated the problem.

■■ We shall therefore again attempt to clarify the requirements for proper findings of fact. The Commission has the duty to make *"specific* findings of fact as to the foundation of its award." Prior opinions, insofar as they purported to approve findings of fact couched in general terms, were expressly repudiated in *United States Fidelity and Guaranty Company v. Industrial Commission,* 128 Colo. 68, 259 P.2d 869. Specific findings require the Commission to find the *evidentiary* and *ultimate* facts. *Metros v. Denver Coney Island,* 110 Colo. 40, 129 P.2d 911.

■ Evidentiary facts are those facts which are necessary for determination of the ultimate facts. Ultimate facts are the substance of the conclusions from the evidence. 30A C.J.S. *Equity* § 493, and *Industrial Commission v. Big Six Co.,* 72 Colo. 377, 211 P. 361, states that the Commission might well "by analogy, observe the requirements of a court of equity as to findings of fact . . ." The two classes of fact are distinct, but interrelated. Evidentiary facts are the premises upon which the conclusions of ultimate facts are based.

■ The foregoing requirements for findings of fact are especially applicable to the circumstances of this case. First, the claimant filed a petition for review, and C.R.S. 1963, 81-14-6 specifically prescribes the referee's duty in this regard:

". . . In any event, if he has not already done so, *the referee shall,* following a petition to review his order, *make findings of fact which shall include all evidentiary and ultimate facts* necessary to support his order. . . ." (Emphasis added.)

Second, the death of the referee precluded his making findings of fact after the only full hearing which was held on claimant's petition to re-open his claim. The

372

successor referee, whose findings are here disapproved for insufficiency, held a limited hearing for the sole purpose of taking testimony of a single medical witness. His findings were ostensibly based on this testimony and on his review of the entire Commission's file, including a transcript of testimony before referee Kelly.

Third, the record discloses a significant variance between the evidence and the ultimate facts found by the referee and affirmed by the Commission. But the referee did not make the evidentiary findings necessary to support his utimate findings, and it is not this court's function to make findings of fact.

In workmen's compensation cases, the sufficiency of a finding must appear upon its face. *Allan v. Gadbois,* 100 Colo. 141, 66 P.2d 331. Here, not only is there a dearth of evidentiary findings, but the record as a whole does not show either expressly or inferentially what the referee and Commission relied upon to support the award of 15% permanent disability as a working unit. The successor referee's finding refers to the investigators' films, but as we view it, only as an impeachment of claimant's testimony. Nowhere in the testimony adduced at the hearings does the content of these films affirmatively appear. They were not shown to the successor referee at the hearing, but from the record it inferentially appears that an investigator privately showed the films to the referee thereafter, albeit with both counsels' consent. However, only inconclusive evidentiary findings were made as to the films' disclosures. Upon this posture of the record, it is impossible for the court to determine whether the award is proper. We reiterate that unless the Commission first finds the evidentiary and ultimate facts, it is futile for this court to consider the case on review. *Alvin H. Watkins, Inc. v. Hamilton,* 159 Colo. 257, 411 P.2d 15, *Metros v. Denver Coney Island,* 110 Colo. 40, 129 P.2d 911. The consequences of the failure to make proper findings of fact are to render the litigants' right to review meaningless, because this court cannot

then resolve the cause upon the merits. The consequences adversely affect all concerned; the time of the courts is uselessly consumed and needless cost and delay is incurred by the litigants. The result is especially harsh for the injured worker, as exemplified by this case. The claimant sustained his work injury in April 1961; his last hearing on his petition to re-open his claim was in December 1966; and, in 1969, this court is unable, because of the inadequacy of the Commission's findings, to resolve finally this cause.

The judgment is reversed and the cause remanded to the Commission for fulfillment of its fact-finding function. Because of the nature of this record, the Commission may wish to order forthwith a further hearing for this purpose.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE PRINGLE and MR. JUSTICE LEE concur.