528 P.2d 966 (1974)
PUFFER MERCANTILE CO., and Division of State Compensation Insurance Fund, Petitioners,
v.
Remijio ARELLANO, and Industrial Commission of Colorado, Respondents.
No. 74-141.
Colorado Court of Appeals, Div. III.
October 30, 1974.
Rehearing Denied November 19, 1974.
Certiorari Granted December 23, 1974.
Francis L. Bury, James A. May, Robert S. Ferguson, Denver, for petitioners.
*967 Tom W. Armour, Colorado Springs, for respondent Remijio Arellano.
John P. Moore, Atty. Gen., John E. Bush, Deputy Atty. Gen., Peter L. Dye, Asst. Atty. Gen., Denver, for respondent The Industrial Commission of Colorado.
Selected for Official Publication.
STERNBERG, Judge.
This is a petition for review by an employer and its insurance carrier from an order of the Industrial Commission finding the claimant to have sustained a 1% permanent partial disability. We affirm.
The claimant's work required him to unload a railroad boxcar. In the course of this employment he lifted and carried boxes of varying weights, some being as heavy as "a little over 50 pounds." The only medical testimony in the record was that this physical exertion on the day of the injury aggravated a preexisting groin infection known as epididymitis. The epididymitis developed into acute orchitis and caused necrosis of the left testicle. Surgery followed for removal of the left and right epididymides and of the left testicle.
No question is raised in this appeal regarding the causal relationship between the employment and the injury resulting in surgery. Rather, the employer contends that there is insufficient evidence in the record to support the finding that the injury left the claimant with any permanent partial disability.
The statute, 1971 Perm.Supp., C.R.S.1963, 81-12-9(1)(b), requires that:
"In determining permanent partial disability, the director shall ascertain in terms of percentage the extent of general permanent disability which the accident has caused, taking into consideration not only the manifest weight of the evidence, but the general physical condition and mental training, ability, former employment, and education of the injured employee . . . ."
The relevant testimony from the claimant on the issue of permanent partial disability is as follows:
"Q. Since you have gone back to. . . work . . . are you lifting heavy objects now?"
"A. I haven't tried. I'm afraid to try."
When the treating physician was asked if the claimant had "suffered any physical functional impairment as the result of his surgery and infection aggravated by trauma," he replied:
"Well, I haven't had an opportunity to examine him since he healed up. All I know is he has one less testicle, and I am not sure that would be of any consequence other than how he feels about it, you know, from an emotional stand-point." (emphasis supplied)
This court's interpretation of workmen's compensation laws is governed by certain well established principles. First, "such statutes are to be liberally construed to accomplish the beneficent social and protective purposes of such enactments." University of Denver v. Industrial Commission, 138 Colo. 505, 335 P.2d 292. It has also been stated that:
"[T]he reviewing court will not ordinarily weigh the evidence nor substitute its judgment for that of the commission on findings of fact or choices between conflicting testimony or inferences, even when it is convinced that the weight of the evidence is contrary to the commission's findings. It is the commission's function to weigh the evidence and make findings on questions of fact, which includes such matters as the . . . extent of disability . . . ."
3 A. Larson, Workmen's Compensation Law § 80.20; Colorado Fuel & Iron Corp. v. Industrial Commission, 151 Colo. 18, 379 P.2d 153. Additionally, as stated in Wierman v. Tunnell, 108 Colo. 544, 120 P.2d 638:
"[T]he weight to be given to such testimony was a matter for the commission, the members of which, because of their experience in this field, have developed expert knowledge of the problems involved, which makes them competent to *968 evaluate evidence in cases of this character."
In London Guarantee & Accident Co. v. Industrial Commission, 70 Colo. 256, 199 P. 962, the court affirmed an award of disability based upon injury to the male generative organ stating that:
"`The term "disability" is not restricted to such disability as impairs present earning power at the particular occupation, but embraces any loss of physical function which detracts from the former efficiency of the body or its members in the ordinary pursuits of life.'" (emphasis supplied)
While the injury sustained by the claimant in London was more severe than that in the instant case, the holding of the court in that case is, nevertheless, significant here.
Hence, we conclude that the claimant's statement about fear of lifting, and the physician's reference to the emotional impact constitute sufficient evidence upon which the referee and commission could conclude that this man did sustain the minimal 1% permanent partial disability.
The employer also urges as grounds for reversal the conclusion of the referee that the bilateral removal of the epididymides left the claimant "impotent" when in reality the evidence showed him to be "improcreant." Either condition represents a loss of physical function which detracts from the former efficiency of the body, and thus, we hold this error to be insignificant and one which should be disregarded. 1971 Perm.Supp., C.R.S.1963, 81-14-14.
Order affirmed.
RULAND, J., concurs.
VanCISE, J., dissents.
VanCISE, Judge (dissenting):
I respectfully dissent. The order should be set aside.
In an order dated June 27, 1973, the referee found that "the claimant as a result of surgical intervention has suffered a permanent partial disability of a nominal 1 percent as a working unit." After employer and its insurer sought review by the Commission, the referee issued his "Supplemental Order" and amplified the above finding to read:
"On the specific contention of the permanent partial disability, it is found that the claimant sustained 1% permanent partial disability as measured as a working unit. Consideration was given to the claimant's age of 49 years, his mental training and work history being a general laborer, his physical condition prior to the trauma of the surgery and the resulting emotional impact following surgery, the pain associated with epididymitis and the unilateral left orchidectomy. . . .
"The Referee finds that as a result of these surgical procedures claimant has recovered and bears no permanent disability interfering with his functional processes. However, the medical evidence clearly indicates that the claimant is now impotent and the loss of the left testicle from surgery was more than considerable emotional impact and while not interfering with the immediate functional operation of his body such as loss of lifting and doing labor work, he nevertheless, has sustained a bodily loss for which he should be compensated. . . ." (emphasis added)
These findings were adopted by the Commission in its award.
From the above it is clear that, although the emotional impact and pain associated with the infection and surgical removal of claimant's left testicle and both epididymides were considered, they are not the basis upon which the permanent disability award was made. The conclusion is that the claimant "has sustained a bodily loss" which entitles him to compensation. The *969 language "bodily loss" is the antithesis of the emotional impact upon which the majority bases its conclusion.
As the majority states, workmen's compensation statutes "are to be liberally construed to accomplish the beneficent social and protective purposes of such enactments." University of Denver v. Industrial Commission, 138 Colo. 505, 335 P.2d 292. The purposes of the Workmen's Compensation Act (the Act) are to protect the employee from, and to hold the employer primarily liable for, injury and disability to an employee from accidents arising out of and in the course of employment. Vanadium Corp. of America v. Sargent, 134 Colo. 555, 307 P.2d 454; Century Indemnity Co. v. Klipfel, 99 Colo. 213, 61 P.2d 842. This court cannot insert new provisions into the Act, and it cannot extend the Act beyond the limits of its purposes. Industrial Commission v. Baldwin, 139 Colo. 268, 338 P.2d 103; Colorado Fuel & Iron Co. v. Industrial Commission, 88 Colo. 573, 298 P. 955.
Different sections of the statute serve different purposes. The medical payments and temporary partial or temporary total disability provisions provide for the reimbursement of an employee for financial burdens resulting from any work-related injury. See 1971 Perm.Supp., C.R.S.1963, 81-10-1, 81-12-1, and 81-12-2. Under these provisions, claimant's employer (of two days) was required to pay claimant's medical and hospital expenses and a temporary total disability award. However, the permanent partial and permanent total disability portions of the Act, 1971 Perm.Supp., C.R.S.1963, 81-12-9(1)(b), and C.R.S.1963, 81-12-8(1), provide a money substitute for whatever permanent loss of earning capacity the employee has incurred.
London Guarantee & Accident Co. v. Industrial Commission, 70 Colo. 256, 199 P. 962, cited by the majority, concerned a workman who, as a result of an accident, was changed from a man of unusual strength and endurance to a man unable to carry on protracted physical exertion without periods of rest during working hours. The court found him disabled to the extent that his physical and mental efficiency had been substantially impaired.
In more recent cases, it has been made clear that the term "disability" means "industrial disability or loss of earning capacity and not mere functional disability." Colorado Fuel & Iron Corp. v. Industrial Commission, 151 Colo. 18, 379 P.2d 153; Byouk v. Industrial Commission, 106 Colo. 430, 105 P.2d 1087. The Commission is required to determine permanent disability, if any, based on this standard. Colorado Fuel & Iron Corp., supra.
Colorado is included in the majority of states which recognizes that "the present analysis of the distinctive compensation concept of disability rests squarely on the foundation that the primary ingredient in disability is not medical impairment as such, but loss of earning capacity related to that impairment." 2 A. Larson, Workmen's Compensation Law § 57.10.
"In compensation, unlike tort, the only injuries compensated for are those which produce disability and thereby presumably affect earning power. For this reason some classes of injuries which result in verdicts of thousands of dollars at common law produce no award whatever under a compensation statute. . . . Similarly, impairment or destruction of sexual potency is not in itself a basis for an award, and presumably the same result would apply to such an injury as destruction of child-bearing capacity in a woman." 1 A. Larson, Workmen's Compensation Law § 2.40. See also, Heidler v. Industrial Commission, 14 Ariz.App. 280, 482 P.2d 889.
Not only did the referee not find, but there is no evidence in the record to support a finding of, any permanent industrial disability or permanent loss of earning capacity *970 either from physical loss or from emotional impact. In fact, as stated by the attending physician, "he should be better off."
The Commission, by basing its award on claimant's having "sustained a bodily loss" which resulted in no permanent loss of earning capacity, is injecting the "wholeman theory" into the Colorado Workmen's Compensation Law without any authority therefor.
"[A]ny abandonment of the pervading impairment-of-earning-capacity concept in favor of an ill-defined notion that workmen's compensation is designed to indemnify for physical injury as such could raise serious dangers to the system. One danger stems from the utter absence of any yardstick by which to measure in dollars the intrinsic value of individual functions of different parts of the body to different persons. . . .
"A familiar practical danger lies in the tendency for the whole-man theory to turn imperceptibly into the less elegant `let's-give-the-poor-guy-something' theory. The end of this road is the kind of situation that has developed in New Jersey, in which a grotesque proportion of the compensation benefit dollar is frittered away on trivial awards of, perhaps, 2½% disability-whatever that may be awards that bear no conceivable relation to the real purpose of workmen's compensation, that of protecting the victims of industrial injury from insecurity and dependency." 2 A. Larson, Workmen's Compensation Law § 57.10.
Note the 1% award in the instant case.
The legislature and the Colorado Supreme Court in the past, by tying "disability" to loss of earning capacity, have clearly rejected the whole-man theory. Absent legislative change, or reinterpretation by the Supreme Court, neither we nor the Industrial Commission have the authority to adopt it.