## CHARLES W. MATHISON v. THERMAL COMPANY, INC., AND ANOTHER.

### 243 N. W. 2d 110.

### May 14, 1976—No. 45679.

*LeVander, Zimpfer & Tierney, Paul D. Tierney,* and *Peter J. Krieser,* for relator.

*Lasley, Gaughan, Reid & Stich* and *W. M. Lasley,* for respondents.

Heard before Kelly, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

PER CURIAM.

The employee seeks review of a decision of the Workers' Compensation Board finding that he was not entitled to compensation for a 50-percent general permanent partial disability. The only issues are whether the board applied the correct criteria in determining compensation under Minn. St. 1967, § 176.101, subd. 3(45), and whether the board's finding is supported by substantial evidence. We affirm.

The employee suffered a personal injury to his head arising out of and in the course of his employment on December 19, 1968. Beginning in 1972, he began to experience a variety of symptoms including headaches, blurred vision, and loss of memory. This condition was diagnosed as a seizure disorder and causally related to the above injury. Although anticonvulsant medication almost completely relieves his symptoms, the employee is precluded from activities that involve climbing, hazardous driving, and working around machinery with moving parts. It will be necessary for the employee to take anticonvulsant medication for the remainder of his life.

At the time of his injury, the employee worked at Thermal Company's city desk processing orders. He was earning $122.25 for a 40-hour week. After the injury, he received several raises, raising his wage to $154 per week in January 1973. On January 26, 1973, he was terminated

by Thermal Company as part of a staff reduction. On June 28, 1973, he was hired by the Trane Company as parts manager at $550 per month. He received raises after 90 days and after 6 months so that he was earning $650 per month at the date of the compensation hearing. His job responsibilities at the Trane Company are roughly equal to those at the Thermal Company.

An employment expert testified as to the limitations on the types of jobs available to persons with seizure disorders. Although he testified that the employee's salary at the Trane Company was about average for the type of work he was doing, he estimated that the employee had suffered a reduction in earning capacity of approximately 25 percent.

The board found that the employee had sustained a 50-percent general permanent partial disability and that at all times material to the action his wage had equaled or exceeded that which he was earning at the time of his injury. On the basis of Minn. St. 1967, § 176.101, subd. 3(45),[1] compensation was denied.

What an employee is "able to earn in partially disabled condition" is a question of fact. In Enrico v. Oliver Iron Min. Co. 199 Minn. 190, 192, 271 N. W. 456, 457 (1937), we held that what an employee is able to earn is not the same as his actual earnings.

"* * * In any event, the compensation to be awarded may not be computed on the basis of what was actually earned or what could have been earned during the particular period since the date of the accident * * * for the actual amount that an employee earns after an accident is not necessarily a fair measure of his earning capacity. * * * It is his

---

[1] Minn. St. 1967, § 176.101, subd. 3(45), provides as follows: "In all cases of permanent partial disability not enumerated in this schedule the *compensation shall be 66 and 2/3 percent of the difference between the daily wage of the worker at the time of the injury and the daily wage he is able to earn in his partially disabled condition,* subject to a maximum of $60 per week, and continue during disability, not beyond 350 weeks; and if the employer does not furnish the worker with work which he can do in his permanently partially disabled condition and he is unable to secure such work with another employer after a reasonably diligent effort, the commission may fix a rate of compensation to be paid to the worker during the period of his unemployment, not beyond 350 weeks, which is to be based upon the percentage of his general physical disability as determined from competent medical testimony adduced at a hearing before a referee, a commissioner, or the commission." (Italics supplied.)

ability to earn, not his actual earnings, that should be the basis of the award."

However, actual, concrete evidence of earnings is not to be disregarded by the commission and, in fact, creates a presumption of earning capacity. Roberts v. Motor Cargo, Inc. 258 Minn. 425, 104 N. W. 2d 546 (1960).

The employee argues that postinjury wages are an inaccurate and improper measure of earning capacity because they cover a limited period of time and do not reflect the impairment as it affects the employee's entire working lifetime. While there is some merit to employee's argument, we believe that under the particular facts of this case the board properly based its finding on the employee's earnings alone. The board considered a 5-year postinjury employment history throughout which the employee had received periodic raises, and at the end of which he was receiving a wage that was average for his type of work. The employee's disability had not caused him to seek a different type of employment, one that might have less potential for salary or position advancement. At the time of the compensation hearing, the employee by using medication was able to perform his duties and was apparently secure in his position.

The employee also argues that the board should have considered the effects of inflation in determining his postinjury wage and earning capacity. However, there is no basis for an inflationary adjustment in the compensation act, and the authority for any such adjustment must come from the legislature.

The employee has the right to submit this matter to the board for reconsideration at any time in the future should his situation materially change.

Affirmed.