Gilbert EVANS, Petitioner,

v.

AURORA ELEVATOR COMPANY, Employer-Respondent,

and

State Compensation Insurance Fund, Insurer-Respondent

and

Charles J. McGrath, Director of the Division of Labor and the Industrial Commission of Colorado, Respondents.

No. 81CA0140.

Colorado Court of Appeals, Div. I.

July 9, 1981.

Gorsuch, Kirgis, Campbell, Walker & Grover, C. William Browne, Denver, for petitioner.

Samuel H. Collins, William J. Baum, Denver, for respondents Aurora Elevator Company and State Compensation Insurance Fund.

J. D. MacFarlane, Atty. Gen., Lynn L. Palma, Asst. Atty. Gen., Denver, for respondents Industrial Commission and Charles J. McGrath, Director of the Division of Labor.

COYTE, Judge.

Claimant, Gilbert Evans, seeks review of a final order of the Industrial Commission awarding him workmen's compensation benefits for permanent partial disability of eight per cent as a working unit. We affirm.

The pertinent facts are essentially undisputed. While working as an elevator mechanic for Aurora Elevator Company in September 1978, claimant sustained compensable injuries to his back and left wrist. He reached maximum medical improvement in February 1980.

Because of his injuries, claimant was unable to return to work as an elevator mechanic. During his period of temporary disability, the insurer provided vocational rehabilitation training to prepare claimant for management in the carpet cleaning business, and at the time of the hearing on permanent disability, he testified that he wanted to establish his own business. However, shortly after the hearing, he submitted an affidavit stating that he had taken a job as an elevator inspector.

Claimant was 38 years old at the time of the hearing. He had a high school education and the majority of his work experience had been as an elevator mechanic. He had worked for the instant employer for approximately a year and a half and was earning $8.50 an hour when he was injured. He testified that at the time of his injury he was not a member of the elevator union, but that Aurora Elevator subsequently became unionized, and, on his return to work, he had intended to join the union. In response to a question as to whether he would still be working for Aurora Elevator if he had not been injured, he stated that "I would be working for one of the elevator companies. I don't know about Aurora ...."

Claimant sought to establish his loss of earning capacity with testimony from the business manager of the union. The hearing officer permitted this testimony specifically for the purpose of establishing that as a union elevator mechanic at Aurora Elevator claimant would be earning $12.52 per hour at the time of the hearing. Claimant's rehabilitation counselor testified that the rehabilitation plan established for claimant anticipated earnings of between $8.50 and $9.00 for him as owner and manager of a carpet cleaning business. Claimant earned $8.20 per hour in his post-injury job as elevator inspector.

The medical evidence consisted of reports from claimant's treating physician and three examining physicians. They agreed that claimant had sustained permanent disability as a result of his wrist injury, but disagreed as to whether it constituted a working unit or a scheduled disability. Two examining orthopedists concluded that he had also sustained permanent disability as a result of his back injury, with one opining that he had a six per cent working unit disability from both injuries and the other estimated claimant's total disability as eight per cent as a working unit. Claimant's treating orthopedist felt that he had no "significant impairment" related to his back injury and evaluated the wrist injury as a 25 per cent loss of the hand at the wrist. The fourth doctor, a hand specialist, estimated a 34 per cent loss of the forearm at the elbow.

The hearing officer found that claimant could no longer work as an elevator mechanic and noted his employment as an inspector at a "wage ... slightly less than he was making two years ago as a journeyman elevator repairman." He also noted the conflicting medical testimony, and "[o]n the basis of all of the evidence," awarded claimant a working unit disability of eight per cent. The Commission affirmed and adopted the hearing officer's order.

Claimant contends that the Commission erred as a matter of law in its award of permanent disability. He maintains that it should have calculated permanent disability as the difference between what claimant would have been earning at Aurora Elevator at the time of the hearing but for the injury and his post-injury earnings. We perceive no error.

Section 8–51–108(1)(b), C.R.S.1973 (1980 Cum.Supp.) provides in pertinent part:

"In determining permanent partial disability, the director shall ascertain in terms of percentage the extent of general permanent disability which the injury has caused, taking into consideration not only the manifest weight of the evidence but also the general physical condition and mental training, ability, former employment, and education of the injured employee."

We agree with claimant that the determination of the extent of a worker's disability is based on the loss or impairment of his earning capacity. *Colorado Fuel & Iron Corp. v. Industrial Commission*, 151 Colo. 18, 379 P.2d 153 (1962). Furthermore, under some circumstances, the Commission can measure the extent of disability by comparing a worker's post-injury earnings with the earnings that he would have been receiving at the same time but for his injury. *See American Metals Climax, Inc. v. Cisneros*, 195 Colo. 163, 576 P.2d 553 (1978). However, while impaired earning capacity, as it relates to the kind of work in which a claimant was employed when he became disabled, is a pertinent factor which the Commission must consider when evidence relative thereto is submitted, it is but one of many factors to be considered under the mandate of the above-quoted statute. *American Metals Climax, Inc. v. Cisneros, supra; Byouk v. Industrial Commission*, 106 Colo. 430, 105 P.2d 1087 (1940).

And, it is also true that actual post-injury earnings do not always accurately reflect a worker's true earning capacity subsequent to his injury. *See generally* 2 A. Larson, *Workmen's Compensation Law*, § 57.21 (1981); *see also Mathison v. Thermal Co., Inc.*, 308 Minn. 471, 243 N.W.2d 110 (1976).

In determining the extent of permanent disability in a particular case, the Commission must consider those factors upon which evidence has been presented. It is the Commission's prerogative to weigh the evidence, and a reviewing court must presume that the Commission considered and gave due weight to all relevant factors. *American Metals Climax, Inc. v. Cisneros, supra.*

■ Applying these principles here, we find no legal error in the Commission's determination of the extent of claimant's permanent disability. Unlike *American Metals Climax, Inc. v. Ciseros, supra,* the Commission here had considerable and conflicting testimony as to the percentage rating of claimant's physical impairment. *See Byouk v. Industrial Commission, supra; see also Dravo Corp. v. Industrial Commission,* 40 Colo.App. 57, 569 P.2d 345 (1977). It also had evidence of his training and qualifications for gainful activity other than the post-injury job which he held. Based on the record, the Commission could find that claimant's actual earnings subsequent to his injury were not representative of his earning capacity, that there was insufficient evidence relative to his post-injury earning capacity, and also that he did not sufficiently establish that but for the injury he would have been working at union wages. In light of the hearing officer's statement that he would permit testimony to establish what claimant would be earning if he had been able to continue working as a mechanic for Aurora Elevator, we must presume that this evidence was considered by the hearing officer and the Commission. *See American Metals Climax, Inc. v. Cisneros, supra.*

The Commission is vested with the widest possible discretion in determining the extent of an injured worker's disability. Here the award is in accordance with the applicable legal principles, and it is supported by the testimony in the record. There was no error of law, and contrary to claimant's alternative contention, there was also no abuse of discretion.

Order affirmed.

SMITH and VAN CISE, JJ., concur.