John R. WHITTAKER, Jr.

v.

HEALTH–TEX, INC.

No. 80–47–Appeal.

Supreme Court of Rhode Island.

Jan. 13, 1982.

Slepkow, Slepkow & Rappoport, Stephen J. Hirsch, Stephen M. Rappoport, East Providence, for appellant.

Roberts, Carroll, Feldstein & Tucker, Bruce G. Tucker, James T. McCormick, Providence, for appellee.

OPINION

SHEA, Justice.

This case is before the court on appeal by the employee, John R. Whittaker, Jr., from a decree of the Appellate Commission of the Workers' Compensation Commission affirming a decree entered by the trial commissioner granting compensation benefits to Whittaker for part of the time for which he had sought them. The sole issue raised on appeal is whether there was legally competent evidence in the record to support the appellate commission's decision. We affirm.

At the time of his injury Whittaker was employed as a forklift operator by Health-Tex. He stated that his job consisted of unloading trucks and delivering yarn and that it involved much lifting and walking. On February 21, 1978, he suffered a contusion and puncture wound to his lower right leg after it was caught between two forklifts when a brake let go. Whittaker and Health-Tex entered into a preliminary agreement on March 13, 1978, whereby Health-Tex agreed to pay Whittaker compensation based on an average weekly wage of $163.66 for a period not to exceed thirteen weeks.

On June 20, 1978, Whittaker filed an original petition at the Workers' Compensation Commission seeking benefits for total disability from February 22, 1978, and "continuing." In his petition Whittaker stated that he had received benefits from his employer from February 22, 1978 until May 10, 1978.

At the hearing before the trial commissioner, Dr. Richard Bertini testified on Whittaker's behalf. It was Dr. Bertini's opinion that Whittaker was totally incapacitated for work from March 2, 1978, when he first examined him, until May 25, 1978, at which time he felt Whittaker was able to do

light selected work. Whittaker testified that he returned to work at his regular job on July 28, 1978 at a wage level in excess of the amount he was earning previously.[1]

Based on the evidence presented at the hearing the trial commissioner found that Whittaker was totally incapacitated for work from March 2, 1978 until May 25, 1978. He further concluded that Whittaker was partially incapacitated between May 25 and July 28, 1978, and thus ordered that compensation be paid accordingly through July 28.

On appeal, in a decision dated December 28, 1979, the appellate commission affirmed the trial commissioner upon examination of the record. The full commission found that Whittaker was able to return to his regular work on July 28, 1978, and that there was no evidence that he was earning less money upon return than he had been earning prior to his injury on February 21, 1978. Further, the commission found no evidence to substantiate Whittaker's claim of a continuing partial disability after July 28.

Whittaker filed his notice of appeal to this court on January 9, 1980. He argues that the evidence adduced at the hearing established that the physical side effects of his injury had not disappeared at the time he returned to work on July 28. Also he claims that the record was devoid of clear, uncontradicted evidence that he was receiving wages equal to or greater than those he had received previously. Therefore, Whittaker argues that the appellate commission erred in affirming the decree of the trial commissioner.

Under Rhode Island's statutory scheme it is the loss of an employee's earning capacity, not the injury itself, which is compensable. *Peloso, Inc. v. Peloso*, 103 R.I. 294, 237 A.2d 320 (1968). In *Peloso* this court concluded that "[w]ithout a loss or impairment of earning capacity, no recovery of workmen's compensation benefits may be accorded an injured employee irrespective of the fact that a permanent or lingering physical injury may have been sustained." *Id.* at 297, 237 A.2d at 323. The burden of proof of whether there has been a loss of earning capacity lies with the employee. To sustain this burden a petitioner must prove the loss with some specificity. *Rodiboux v. Uniroyal, Inc.*, R.I., 403 A.2d 262, 264 (1979); *Weber v. American Silk Spinning Co.*, 38 R.I. 309, 315, 95 A. 603, 605 (1915). Whittaker's testimony regarding his earnings after returning to work created a presumption that he, even if suffering from a continued disability, has not sustained the requisite impairment of earning capacity. That presumption is rebuttable however, if the employee demonstrates that his weekly earnings are an unreliable basis for estimating earning capacity. *Kilsey v. Chuck Wagon, Inc.*, R.I., 379 A.2d 919, 920 (1977). Such a situation may occur when payments represent accumulated sick leave and vacation pay, or are intended as a gesture of gratitude by the employer. Whittaker has made no such claim in this case.

In this instance we find that Whittaker has failed to meet this burden of proof on this issue. There was evidence in the record consisting of both the preliminary agreement and Whittaker's wage sheet introduced by Health-Tex which established that Whittaker's preinjury weekly wage was $163.66. Whittaker presented no evidence whatsoever at the hearing before the trial commissioner to establish his post-

---

1. The text of Whittaker's direct testimony before the trial commissioner concerning his return to work and his earning capacity is as follows:

"Q  Have you been working at Health-Tex since July 28?
"A  Yes.
"Q  Are you doing your regular job now?
"A  Yes.
"Q  Are you making the same money or more money?

"A  More."

On cross examination the following exchange occurred:

"Q  Since you returned to work in July, you have been making an average weekly wage equal to or in excess of what you earned before you injured yourself in February?
"A  Equal to. I have not been working any overtime so it works out about the same."

injury average weekly wage. The only evidence in the record consisted of Whittaker's testimony that after he returned to work he was making "more" money than at the time of his injury, and that his average weekly wages were equal to those he received at the time of his injury.[2]

In conclusion, on the basis of the evidence in the record, it was clear that Whittaker failed to sustain his burden of establishing that he suffered a loss of earning capacity. In fact, Whittaker's own testimony was definitely unfavorable to his claim. Thus, the appellate commission properly affirmed the decree of the trial commissioner. The appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Workers' Compensation Commission.

**2.** Whittaker attempted to establish a loss of earning capacity belatedly by filing a letter from Forrest Coop, Health-Tex personnel manager, indicating Whittaker's wages between July 29, 1978 and October 28, 1979. This letter was filed with the Workers' Compensation Commission on April 24, 1979 attached to his memorandum to the full commission on appeal from the trial commissioner's decision. Since this letter was filed approximately four months after the entry of the trial commissioner's decree and was thus never introduced into evidence or made part of the record before the trial commissioner, the appellate commission was without authority to consider its evidentiary effect. As this court has held previously the appellate commission's review of the decree appealed from is limited to the record made before the trial commissioner and the appellate commission lacks authority to enlarge or amend the record. *Perfetto v. Fanning & Doorley Construction Co.*, 114 R.I. 624, 337 A.2d 791 (1975); *Larose v. Warwick Brass Foundry, Inc.*, 97 R.I. 459, 198 A.2d 668 (1964). Also pursuant to G.L. 1956 (1979 Reenactment) § 28–35–28, the appellate commission hears appeals from a decree of the trial commissioner specifically by "review [of] the decree upon the record of the case * * *." There is no provision for enlarging that record before the full commission.