**VAIL ASSOCIATES, INC., and Valley Forge Insurance Company, Petitioners,**

v.

**Robert Dean WEST and Industrial Commission of the State of Colorado, Respondents.**

**No. 83SC5.**

Supreme Court of Colorado, En Banc.

Dec. 17, 1984.

presented no justiciable controversy under that article.

Knapp & Lee, P.C., Robert A. Weinberger, Denver, for petitioners.

Lawrence D. Blackman, Denver, for respondent West.

L. Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Lynn L. Palma, Asst. Atty. Gen., Denver, for respondent Industrial Comn.

QUINN, Justice.

We granted certiorari to review the decision of the court of appeals in *Vail Associates, Inc. v. West*, 661 P.2d 1187 (Colo.App. 1982), which upheld an award by the Industrial Commission of permanent partial disability benefits to the claimant, Robert Dean West. The court of appeals held that West was entitled to permanent partial disability benefits even though his post-injury earnings were higher than his earnings prior to the injury. We affirm the judgment of the court of appeals.

## I.

Robert Dean West injured his lower back on February 10, 1975, while employed as a ski instructor for Vail Associates, Inc. The injury occurred during the Vail ski season while West was teaching at a clinic for ski instructors. West, who was then twenty-seven years old, was working seven days per week as an instructor and was earning $29 per day. On April 30, 1975, West underwent a lumbar laminectomy and disc excision, and in August 1975 his physician permitted him to resume light work and released him from further treatment two months later. On December 31, 1975, Vail Associates, Inc. (employer) and its insurer, Valley Forge Insurance Company (insurer), admitted liability for temporary total disability benefits for the period from February 11, 1975, to August 8, 1975, and for permanent partial disability of 4¼% as a working unit. On February 11, 1976, the Industrial Commission granted West an award of temporary total and permanent partial disability benefits based on this admission of liability.

West returned to work as a ski instructor during the next three ski seasons at Vail, but due to his worsening physical condition filed a - petition to reopen his claim on March 13, 1978.[1] West testified that al-

---

1. West's petition was brought pursuant to section 8–53–119, 3 C.R.S. (1973), which authorizes the Director of the Division of Labor to review and reopen an award within six years from the date of an industrial accident, or within two years after the date on which the last payment became due and payable, whichever is longer, and to increase compensation and any medical benefits previously awarded. Article 53 of the Workmen's Compensation Act was repealed and reenacted in 1983 (ch. 79, sec. 1, §§ 8–53–101 to –129, 1983 Colo.Sess.Laws 416–24). The present

though he experienced some stability in his low back following the 1975 surgery, his condition significantly deteriorated in January 1978, and he underwent a spinal fusion in the lumbosacral region of his back in April 1979. This subsequent surgery, according to West, left him with reduced flexibility and rendered him unable to resume his occupation as a ski instructor. West also testified that prior to his latest surgery he had worked as a house painter during the summer months, that he was no longer able to pursue this employment, and that he had to abandon his plans to teach skiing in Australia during the summer of 1978. There was evidence showing that West's maximum potential earnings from ski instruction and summer employment would have been approximately $30,000 per year. After the 1975 injury West obtained a real estate broker's license, and in 1978 he began working as a real estate broker. During the one year period of April 1979 to April 1980 West earned $90,229.79 from real estate transactions.

Medical evidence submitted at the hearing indicated that the 1979 lumbosacral fusion relieved West of some of his low back pain, but left him with severe limitations of motion. Estimates of his disability ranged from 12% as a working unit to 25–30% as measured at the low back.[2]

The hearing officer found that West's physical condition had worsened since the industrial accident of February 10, 1975, and that the 1979 lumbar fusion rendered him unable to teach skiing and to engage in other strenuous work. While noting that West's earnings from ski instruction and summer employment would not have exceeded $30,000 annually, and that West had earned $90,229.79 as a real estate salesman during the period of April 1979 to April 1980, the hearing officer nonetheless concluded that West suffered an additional permanent partial disability of 5¾% as a

result of the industrial accident of February 10, 1975, and that his worsened condition eliminated him from a substantial number of employment opportunities that otherwise would have been available to him. West was awarded additional permanent partial disability benefits of $8,280.35. The Industrial Commission affirmed the award, as did the court of appeals. Relying on section 8–51–108(1)(b), 3 C.R.S. (1984 Supp.), which enumerates the factors to be considered in determining permanent partial disability, the court of appeals concluded that "an increase in post-injury income in and of itself does not render improper an award for loss of earning capacity." *Vail Associates, Inc.*, 661 P.2d at 1189. We granted certiorari to consider whether West's post-injury increase in earnings precluded a finding of loss of earning capacity in connection with his claim of permanent partial disability due to a worsened condition.

In urging reversal of the court of appeals' decision, the employer and the insurer present the following argument: Colorado should adopt a rule which treats evidence of a post-injury increase in earnings as giving rise to a rebuttable presumption of earning capacity commensurate with actual earnings; when this presumption attaches, a claimant must rebut the presumption by evidence independently showing that the post-injury earnings are an unreliable basis for determining earning capacity; and the claimant's failure to rebut the presumption in this case renders the award of 5¾% additional permanent partial disability erroneous. Although this rule of rebuttable presumption has been applied in several jurisdictions, *e.g., Hewing v. Peter Kiewit & Sons*, 586 P.2d 182 (Alaska 1978); *Mitchell v. White Castle Systems, Inc.*, 290 N.W.2d 753 (Minn.1980); *Agee v. Bay Springs Forest Products, Inc.*, 419 So.2d 188 (Miss.1982); *Special Indemnity Fund*

statutory authorization for a petition to reopen is found at section 8–53–113, 3 C.R.S. (1984 Supp.).

2. In proceedings before the Industrial Commission the employer and the insurer conceded that

West's physical condition had worsened since the industrial accident of February 10, 1975, and that he was now permanently physically impaired to the extent of 10% as a working unit.

v. *Stockton*, 653 P.2d 194 (Okla.1982); *Whittaker v. Health-Tex, Inc.*, 440 A.2d 122 (R.I.1982), we decline to adopt it and, instead, elect to adhere to our existing rule which allows the Commission to consider post-injury earnings as one factor among several in ascertaining permanent partial disability.

Section 8–51–108(1)(b), 3 C.R.S. (1984 Supp.), provides in pertinent part as follows:

> In determining permanent partial disability, the director shall ascertain in terms of percentage the extent of general permanent disability which the injury has caused, taking into consideration not only the manifest weight of the evidence but also the general physical condition and mental training, ability, former employment, and education of the injured employee. The director shall then determine the injured employee's expectancy of life from recognized expectancy tables and such other evidence relating to his expectancy as may be presented, but in no event shall the employee's life expectancy be reduced for these purposes if his injury or illness is the direct cause of his reduced life expectancy. He shall then ascertain the total amount which said employee would receive during the balance of his expectancy at the compensation rate of eighty-four dollars per week and shall then take that percentage of the total sum so arrived at as is indicated by the percentage of general permanent disability found to exist in the manner as set forth in this article. . . .

■ ■ The term "permanent partial disability" in section 8–51–108(1)(b) refers to industrial disability or loss of earning capacity in the labor market and not merely to a physical impairment or functional disability unrelated to industrial performance. *Byouk v. Industrial Commission*, 106 Colo. 430, 434, 105 P.2d 1087, 1089 (1940);

*see American Metals Climax, Inc. v. Cisneros*, 195 Colo. 163, 576 P.2d 553 (1978); *Matthews v. Industrial Commission*, 627 P.2d 1123 (Colo.App.1980). Our prior cases clearly hold that actual earnings constitute one of several factors pertinent to the determination of whether a claimant has suffered a loss of earning capacity and is thus entitled to an award of permanent partial disability benefits. *E.g., American Metals Climax, Inc. v. Cisneros*, 195 Colo. 163, 576 P.2d 553; *Byouk v. Industrial Commission*, 106 Colo. 430, 105 P.2d 1087.[3] Awards of permanent partial disability have been upheld even when there was evidence of post-injury earnings equal to or in excess of those received by the worker prior to the accident. *Wierman v. Tunnell*, 108 Colo. 544, 120 P.2d 638 (1942); *London Guarantee & Accident Co. v. Industrial Commission*, 70 Colo. 256, 199 P. 962 (1921); *Employers Mutual of Wausau v. Eidson*, 646 P.2d 959 (Colo.App.1982); *Evans v. Aurora Elevator Co.*, 631 P.2d 1201 (Colo.App.1981). As the court observed in *London Guarantee & Accident Co.*, 70 Colo. at 258, 199 P. at 963, the critical inquiry is: "Has the workman's physical and mental efficiency been substantially impaired, and to what extent, and for what period of time will this impairment extend into the future?"

■ ■ Several reasons support the conclusion that a worker's actual earnings following an industrial accident are relevant but not presumptive evidence of the worker's earning capacity. An increase in post-injury earnings might well be due to a number of factors not directly bearing on earning capacity—such as an increase in general wage levels since the industrial accident, longer hours worked by the employee, an extraordinary but temporary upswing in market conditions, or the fortuity of a pay scale substantially disproportion-

---

**3.** So too, our prior case law clearly establishes that the degree of medical or functional disability is only one factor to consider in determining the extent of permanent disability in a worker's compensation case. *E.g., Puffer Mercantile Co. v. Arellano*, 190 Colo. 138, 546 P.2d 481 (1975); *CF & I Corp. v. Industrial Commission*, 151 Colo. 18, 379 P.2d 153 (1963); *R & R Well Service Co. v. Industrial Commission*, 658 P.2d 1389 (Colo. App.1983); *Employers Mutual of Wausau v. Eidson*, 646 P.2d 959 (Colo.App.1982).

ate to the employee's working ability. A permanent physical impairment caused by an industrial injury frequently results in a reduced earning capacity in the future rather than an immediate reduction in present earning capacity. As the Kentucky Court of Appeals reasoned in *Hawkins Bros. Coal Co. v. Thacker,* 468 S.W.2d 256, 257 (Ky.1971):

> While a workman who has sustained a permanent bodily injury of appreciable proportions may suffer no reduction of immediate earning capacity, it is likely that his ultimate earning capacity will be reduced either by a shortening of his work life or a reduction of employment opportunities through a combination of age and physical impairment. Accordingly, it is our opinion that in those instances in which the workman has sustained no loss of immediate earning capacity but has incurred a permanent injury of appreciable proportions, the Workmen's Compensation Board ... can and should make an allowance for some degree of permanent partial disability on the basis of the probability of future impairment of earning capacity as indicated by the nature of the injury, the age of the workman, and other relevant factors.

Indeed, reliance on actual wages as a presumptive measure of earning capacity could penalize a worker for making the best of his or her misfortune and, at the same time, result in a finding of no disability in spite of uncontradicted medical evidence of a permanent impairment that substantially reduces the prospects of the worker's employment in the labor market.

■ We thus decline to engraft onto section 8–51–108(1)(b) a rebuttable presumption that post-injury earnings are the equivalent of post-injury earning capacity. Rather, we adhere to existing Colorado law which allows the Industrial Commission to consider evidence of post-injury earnings as one of several factors relevant to the issue of earning capacity and the ultimate determination of permanent partial disability. *See Wierman,* 108 Colo. 544, 120 P.2d 638; *Byouk,* 106 Colo. 430, 105 P.2d 1087; *Lon-*

*don Guarantee & Accident Co.,* 70 Colo. 256, 199 P. 962; *Employers Mutual of Wausau,* 646 P.2d 959; *Evans v. Aurora Elevator Co.,* 631 P.2d 1201. Our rejection of a rebuttable presumption, in addition to being consistent with prior Colorado case law, is in accord with the decisions of several other jurisdictions. *See Davis v. C.F. Braun & Co.,* 170 Kan. 177, 223 P.2d 958 (1950); *Hawkins Bros. Coal Co.,* 468 S.W.2d 256; *Coty v. Town of Millinocket,* 423 A.2d 524 (Me.1980); *Desrosiers v. Dionne Bros. Furniture,* 98 N.H. 424, 101 A.2d 775 (1953); *Sanchez v. City of Albuquerque,* 75 N.M. 137, 401 P.2d 583 (N.M. 1965); *Mills v. J.P. Stevens & Co.,* 53 N.C. App. 341, 280 S.E.2d 802 (1981).

■ In this case the hearing officer expressly considered all the statutory criteria of section 8–51–108(1)(b) in determining the extent of West's permanent partial disability. Because the record as a whole supports the conclusion that West suffered a worsened condition resulting in an increased physical disability of a permanent duration, along with a concomitant impairment of earning capacity, we will not disturb the Commission's award of permanent partial disability benefits. *See American Metals Climax, Inc.,* 195 Colo. 163, 576 P.2d 553; *Womack v. Industrial Commission,* 168 Colo. 364, 451 P.2d 761 (1969); *Industrial Commission v. Royal Indemnity Co.,* 124 Colo. 210, 236 P.2d 293 (1951).

The judgment is affirmed.

ROVIRA, J., specially concurs.

ROVIRA, Justice, specially concurring:

Although I agree that the record supports a finding that West suffered a physical injury, I have serious doubts that it supports a conclusion that it resulted in an increased physical disability of a permanent duration along with a concomitant impairment of earning capacity. At 1115.

Be that as it may, I join the majority opinion in rejecting the petitioners' argument that a post-injury increase in earnings should give rise to a rebuttable presump-

tion of earning capacity commensurate with actual earnings. In light of our prior decisions that post-injury earnings are only one factor to be considered in ascertaining permanent partial disability, I believe it more appropriate for the petitioners to obtain the relief they seek from the General Assembly.

If we were writing on a clean slate, there is much to be said for the petitioners' argument. *See* 2 A. Larson, *Workmen's Compensation Law* § 57 (1983); *Puffer Mercantile Co. v. Arellano,* 34 Colo.App. 434, 528 P.2d 966 (1974) (Van Cise, J. dissenting), *rev'd,* 190 Colo. 138, 546 P.2d 481 (1975). Absent that condition, and because of my respect for prior decisions of this court, I join in the court's opinion.