## No. 13,649.

London Guarantee and Accident Company et al. *v.* Coffeen et al.

(42 P. [2d] 998)

Decided March 18, 1935.

Mr. William E. Hutton, Mr. J. P. Nordlund, for plaintiffs in error.

Mr. Paul P. Prosser, Attorney General, Mr. M. S. Ginsberg, Assistant, Mr. Frank C. West, for defendants in error.

*In Department.*

Mr. Justice Young delivered the opinion of the court.

The London Guarantee and Accident Company Limited, and the O. P. Baur Confectionery Company, corporations, were plaintiffs in error and will be herein respectively designated as the insurer and the employer. Albert A. Coffeen and the Industrial Commission of Colorado are the defendants in error and will be herein mentioned as the claimant or employee, and the commission.

The claimant was employed as a night watchman. During the course of his employment he was assaulted by two robbers who struck him over the head with an iron bar, dragged him down concrete steps into the basement by his feet, tied him up with baling wire, kicked him in the face, threatened to throw him in the furnace, stuffed a handkerchief in his mouth and shut him in the toilet, where he was found twenty-five minutes later when the officers came upon the scene. As a result of this treat-

ment his scalp was cut above the left eye, and on the back of his head; his skull was fractured on the left side, and he was badly bruised about the eyes and head. Tests at the hospital disclosed that his spinal fluid contained blood. He suffered severe nervous shock. The injuries were inflicted on March 19, 1931. Claimant was confined in the hospital for four weeks and returned to work May 11, 1931, compensation being paid him up to that time on an admission of liability.

On July 1, 1931, claimant went to the doctor who had cared for him in the hospital, for additional treatment, at which time it was discovered that he was suffering from diabetes. On September 29, 1932, more than a year and six months after the accident, claimant filed a petition to reopen the case, alleging that he had some permanent disability and was entitled to more compensation. From the date of filing the petition to reopen, a period of nearly two years passed during which claimant was treated and repeatedly examined, before finding and award were made on August 7, 1934. The findings and award of the commission were as follows: "That claimant was injured in an accident arising out of and in the course of his employment on March 19th, 1931, and left work as a result thereof that same date. That his injuries consisted of contusions of the head and bruises of the entire body. That his temporary total disability terminated on May 11th, 1931. His average weekly wages were $23.10. His age is 58 years with his expectation of life 15.39 years. The Commission now finds from the evidence that the condition from which claimant is now suffering and particularly his diabetic condition is the result of the injury sustained on March 19th, 1931, permanently disabling him to the extent of 60% as a working unit." Such findings were modified by a later finding that claimant's age was sixty, instead of fifty-eight, but otherwise the findings stood. On suit filed in the district court, the foregoing findings and award were

sustained. The insurer and the employer bring the case here for review.

The assignments of error as set forth by the insurer and the employer in their brief are grouped under the two following general propositions: "(1) The Commission acted in excess of its powers in granting compensation for permanent partial disability in that it is not established by the manifest weight of the evidence that such disability proximately resulted from the accident. (2) The Findings of Fact made by the Commission do not support its award."

Five physicians of good standing examined the claimant and all testified in the case. One was the surgeon who attended the claimant at the time of his injury. One was called in consultation at the time of the injury and later made a written report to the commission. One was selected by the insurer, and two others were appointed by the commission. All of these doctors agreed that the claimant at the time of the hearing was suffering from diabetes, which manifests itself by a sugar content in the urine. This condition was first discovered by the doctor who treated claimant at the hospital when the latter went to him for further treatment on July 1, 1931, nearly two months after he had returned to work. The same doctor had not found any sugar present on examinations made while claimant was in the hospital. The principal controversy was whether the diabetic condition was or could be of traumatic origin. Three physicians were of the opinion that it was not; one was of the opinion that it was of such origin, and one was of the opinion, that regardless of the diabetic condition, claimant was suffering effects directly attributable to the injuries sustained.

Claimant had been steadily employed for thirty-nine years prior to his injury and had been strong and able-bodied. The evidence disclosed that after the accident, he had a weakness in one of his arms; was unable to balance himself; had sustained a loss of taste and smell, and exhibited general physical weakness. One of the

doctors, who was of the opinion that the diabetic condition was not of traumatic origin, and that the ailments of which complaint was made were caused by the diabetes, arteriosclerosis, bad tonsils and bad teeth, stated, however, that some of these effects were such as sometimes follow a serious head injury.

The statute on which the first assignment of error is based is section 4452, Compiled Laws of 1921, amended by section 11, chapter 186, Session Laws, 1929, and which, so far as material here, reads as follows: "In determining *permanent partial disability,* the commission shall ascertain in terms of percentage the extent of *general permanent disability* which the accident has caused, taking into consideration *not only the manifest weight of evidence,* but the general physical condition and mental training, ability, former employment, and education of the injured employe."

The contention of the insurer and the employer is that the words in the statute, "taking into consideration not only the manifest weight of evidence," lays down a requirement as to the quantum of proof in cases involving permanent partial disability, which is greater than the proof required where other matters are in issue before the commission, namely, that permanent partial disability must be proved by the manifest weight of the evidence, which they state in their brief means, "by proof which puts the matter beyond question of doubt," and again that " 'Manifest weight of evidence' means even more than proof beyond a reasonable doubt." They say further: "We recognize, of course, that this proposition is in conflict with the rule repeatedly announced by this court in compensation cases that if the findings and award of the Commission are supported by any competent evidence they cannot be disturbed by the Courts on review. But in no case where this rule has been invoked or applied, has the peculiar provisions of Section 78 been involved."

The question is thus squarely presented whether under the section of the statute quoted, permanent partial dis-

ability and the percentage of general permanent disability resulting therefrom requires a greater quantum of proof than issues that are to be determined under other sections of the compensation act. No reason has been suggested why a different rule should obtain in such a case, but the insurer contends that the statute lays down a different rule. In our opinion the statute is not susceptible of such construction.

■ We think that the statute means that *permanent partial disability* shall be translated into or expressed in terms of *general permanent disability* and the percentage of such general disability fixed. It is obvious that a shortened limb constitutes permanent partial disability. It may cut down the effective use of the limb twenty-five per cent, but this is expressing the injury, not in terms of "general permanent disability," but restating it in terms of partial disability, for the complete loss of the limb would be only partial disability. The percentage of "general permanent disability" is not the same for all individuals who may suffer the same injury. A man who sits at a bench and works with his hands obviously is not disabled as a working unit by a shortened leg to the same extent as one who performs messenger duties around the plant. A man engaged for years as messenger in a plant, whose education is such that he can do only work of similar character, suffers more "general permanent disability" from a shortened leg, than a man whose ordinary duties are that of an accountant, but who is temporarily and while injured doing work that requires the use of his legs. Examples might be multiplied; but from those here given, it is clear that rather than laying down a rule as to the quantum of proof of which the claimant must bear the burden, the statute intends to set forth the factors that the commission shall consider in translating what may be an obvious or manifest "partial permanent disability" into terms of "general permanent disability."

■ "The manifest weight of evidence" is merely one of the factors to be considered along with the "general

physical condition and mental training, ability, former employment and education of the injured employee." As so used, what does "manifest weight of the evidence" mean? Counsel in their brief devote much space to the meaning of the word "manifest." The cases do not add anything to the definition quoted from Webster's New International Dictionary: "Evident to the senses, esp. to the sight; apparent, distinctly perceived; hence, obvious to the understanding; evident to the mind; not obscure or hidden." "Syn.—Open, clear, visible, unmistakable, indubitable, indisputable, evident, self-evident."

It is helpful to ask and answer the question, In the proof of what fact is the weight of evidence to be manifest? Certainly not in the proof of general permanent disability, nor of the percentage of general permanent disability; for other factors, namely, general physical condition, mental training, ability, former employment and education of the injured employee, are to be considered by the commission, that is, weighed as evidence along with the factor of the "manifest weight of evidence" in proof of some fact or facts.

In our opinion the actual physical disability or injury that is manifest, apparent, evident to the mind, and clear to the commission, after the weighing of the evidence of it, and determining the nature of such actual disability from the preponderance thereof, is the "manifest weight of evidence" to which reference is made in the statute.

Counsel for the insurer and the employer contend there is much significance in the fact that the words "taking into consideration the manifest weight of the evidence" were inserted in the statute by the 1929 amendment. We agree with this contention; and we agree that they must be given whatever meaning was intended by the legislature, irrespective of the consequences. Section 6517, C. L. 1921, states the statutory rule in the construction of acts of the legislature, laid down by the legislature itself. It provides: "In the construction of all statutes the following rules shall be observed, unless such con-

struction shall be manifestly inconsistent with the intent of the legislature, or repugnant to the context of the same statute; that is to say: First—All words and phrases shall be understood and construed according to the approved and common usage of the language.''

We hold, that if the commission determines from a preponderance of the evidence that a partial permanent disability has been sustained, that fact then may be said to be ''manifest'' for the purpose of considering it as one factor entering into the determination of the percentage of general permanent disability. Certainly such construction is not repugnant to, but on the contrary is consistent with, the construction we have placed on other portions of the act in defining the quantum of proof required of the claimant to establish other injuries and consequent disability. *Employers Mutual Ins. Co. v. Industrial Commission*, 83 Colo. 315, 265 Pac. 99.

The second assignment of error, namely, that the findings do not support the award, is without merit. The principal dispute on the hearings, as shown by the whole record, was not whether the claimant was suffering from disabilities, but whether they were proximately caused by the accident, or by a diabetic condition that was not itself superinduced by the accident. The findings are clearly to the effect that the diabetic condition was caused by the accident and that the claimant was permanently disabled to the extent of 60 per cent of his efficiency as a working unit. There was competent evidence that he was so disabled from 50 per cent to 100 per cent and the finding of a 60 per cent disability is supported by the evidence. The findings are sufficient. While they are such as fact finding boards, made up of laymen, may be expected to make, they are not by any means to be considered as a model of what such findings should be. If more care were exercised in making findings, the work, not only of this court, but of the district courts, would be materially lessened and the interests of claimants, employers and insurers would be promoted.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE BURKE concur.