No. 20,650.

SIMPSON AND COMPANY, ET AL., *v.* JOHN B. WHEELER AND THE INDUSTRIAL COMMISSION OF COLORADO.
(386 P. [2d] 976)

Decided November 18, 1963.    Rehearing denied December 9, 1963.

Messrs. COIT & WALBERG, for plaintiffs in error.

Mr. RICHARD W. HANES, for defendant in error John B. Wheeler;

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

BY writ of error Simpson and Company, the employer, and Casualty Reciprocal Exchange, the employer's compensation insurance carrier, seek reversal of the judgment of the trial court affirming and sustaining an award of the Industrial Commission of Colorado based on its finding that John B. Wheeler, the claimant, suffered a thirty percent permanent partial disability as the result of an accident occurring on December 30, 1960, wherein Wheeler slipped and fell while in the process of unloading a boxcar for his employer. The only issue is

whether there is sufficient evidence to support this finding of a thirty percent permanent partial disability and the monetary award based thereon.

In holding that Wheeler sustained a thirty percent permanent partial disability the Commission found "that claimant has a five percent permanent [partial] disability as a working unit from a physical standpoint only, and that in addition thereto, because of claimant's inability to perform manual labor, his age, education, mental training, and former employment, claimant has an additional disability of twenty-five percent as a working unit, making in all a total permanent partial disability of thirty percent."

The employer and its carrier concede that there is evidence to support the finding that Wheeler suffered a five percent permanent partial disability, but contend that there is *no* evidence to support the finding of an additional permanent partial disability of twenty-five percent. Contrarily, Wheeler contends that the record discloses ample evidence to support the finding of the Commission that Wheeler had a thirty percent permanent partial disability as a result of the accident.

C.R.S. '53, 81-12-9 (1) provides, inter alia: " . . . in determining permanent partial disability the Commission shall ascertain in terms of percentage the extent of general permanent disability which the accident has caused, taking into consideration not only the manifest weight of the evidence but the general physical condition and mental training, ability, former employment and education of the injured employee . . . "

Pursuant to the provisions of this section it is agreed that the Commission in determining permanent partial disability is not limited or restricted solely to a consideration of the physical injury, *per se,* but is empowered to also consider, inter alia, the mental training and education, or the lack of it, and former employment of the injured employee.

In the instant case was there evidence before the

Commission which would justify and support its determination that Wheeler suffered a thirty percent permanent partial disability, twenty-five percent of which was attributable to his "inability to perform manual labor, his age, education, mental training and former employment"? Before checking the record in this regard it is believed helpful to briefly examine prior pronouncements of this Court concerning C.R.S. '53, 81-12-9 (1).

In *Byouk v. Industrial Commission, et al.,* 106 Colo. 430, 105 P. (2d) 1087, where the Commission determined that claimant suffered a sixty percent permanent partial disability, this Court said: " . . . the functional disability of an injured workman, compared with that of a normal man, does not control in fixing his compensation status, since the term 'disability' as used in the Workmen's Compensation Act, means *industrial disability* or loss of earning capacity and *not mere functional disability.*" (Emphasis supplied.)

In *London Guarantee & Accident Company, et al., v. Coffeen, et al.,* 96 Colo. 375, 42 P. (2d) 998, where the Commission also determined that the injured employee suffered a sixty percent permanent partial disability, the Court observed that "the percentage of 'general permanent disability' is not the same for all individuals who may suffer the same injury."

Finally, in *Globe Indemnity Company, et al., v. Industrial Commission, et al.,* 67 Colo. 526, 186 P. 522, where a coal miner was determined to have suffered a seventy percent permanent partial disability, it was stated as follows:

"Age, education, training, general physical and mental capacity and adaptability, may and often should, be taken into consideration in arriving at a just conclusion as to the percentage of impairment of earning capacity.

"The claimant in the instant case testified before the Commission. They were thus enabled to make an application of these tests which is impossible to us."

In its report of the accident the employer stated that

Wheeler was injured while "lifting a steel plate which forms a runway between the boxcar and the loading deck . . . [Wheeler] slipped, wrenched his back and sustained strain in his left groin."

In his claim for permanent disability Wheeler declared he "was unable to perform manual work because of reoccuring [sic] painful lower back symptoms and abdominal wall weakness," and in rejecting the carrier's admission of liability "on account of permanent partial disability consisting of 3% of the body as a working unit," Wheeler suggested that a "disability rating of 60% is not unreasonable."

Proceeding then to a consideration of the record, it appears that from the fall Wheeler suffered a left inguinal hernia and sustained injury to his lower back and left leg. In due time the hernia was repaired, and this particular injury plays no part in the present controversy. Wheeler was placed in traction on two separate occasions for a total of 28 days and eventually a laminectomy was performed. Wheeler agreed that this operation "stopped the leg pain," but said he was "still stiff . . . It bothers me when I drive too much or work too much or bend over . . . I just can't do manual labor . . . can't do physical labor or truck driving."

Two orthopedic surgeons examined Wheeler, one testified that Wheeler suffered a "3% permanent disability as a working unit." This doctor went on to testify that in his opinion Wheeler was physically able to perform "meaningful tasks that don't involve a lot of heavy lifting," but that he could not return to his employment with Simpson & Company without "further difficulty." This witness agreed that his disability rating was "based on the clinical examination [of Wheeler] as he stood there in my office," and he concluded his testimony by conceding that under his system of evaluation if Wheeler were a professional man he would still have rated Wheeler's permanent partial disability at three percent, explaining by way of example that doctors do lifting too.

The other orthopedic surgeon opined that Wheeler's permanent disability was five percent, admitting that such percentile figure was based solely on his clinical examination, and that he did not take into account Wheeler's education or prior employment history.

On this state of the medical testimony the Commission was most certainly justified in concluding that the two doctors in their testimony were primarily concerned with "functional disability" and not "industrial disability."

Wheeler, age 30, testified that his job at Simpson & Company involved "loading and unloading" work in and around the warehouse, plus some truck driving. He had previously been employed in a variety of jobs, all of which stressed "back work" and involved a minimal amount of "brain work." Since the accident Wheeler had only worked about ten days as a watchman, which job he quit because, as is set forth above, he found himself to be physically unable to perform the assigned tasks.

Wheeler as a youth only completed the fourth grade of elementary school. At the time of the hearing he was "on welfare" and at the recommendation of the local welfare department had enrolled in the third grade in night school. He had been advised by the department not to attend any rehabilitation school until he "got some education." He stated that he had been to the local employment office in search of employment, but that "they didn't have anything that I could pick up with the education I've got."

On this state of the record and in the light of the aforementioned expressions from this Court concerning C.R.S. '53, 81-12-9 (1), did the Commission as a fact finding body abuse its discretion in determining that Wheeler suffers a thirty percent permanent partial disability? We conclude that there was no such abuse of discretion. In our view there is credible testimony

establishing facts which, when coupled with inferences properly deducible therefrom, amply support such finding.

True, no "expert" expressed any "percentile" opinion as to the degree of "industrial disability" attributable to "the general physical condition and mental training, ability and former employment and education of the injured employee." But that is not the only method of establishing this significant aspect of "industrial disability." There was testimony which established the "general physical and mental training, ability, former employment and education" of Wheeler and such being the case, the Commission by virtue of C.R.S. '53, 81-12-9 (1) is charged with the duty of "taking into consideration" such evidence in determining a claimant's general permanent disability.

The judgment is therefore affirmed.

MR. JUSTICE DAY and MR. JUSTICE HALL dissent.