569 P.2d 345 (1977)
DRAVO CORPORATION and Liberty Mutual Insurance Company, Petitioners,
v.
The INDUSTRIAL COMMISSION of the State of Colorado, Juereta P. Smith, Director, Division of Labor and Don R. Riddle, Respondents.
No. 77-260.
Colorado Court of Appeals, Div. II.
September 8, 1977.
*346 Zarlengo, Mott & Zarlengo, Craig C. Eley, Reed L. Winbourn, Denver, for petitioners.
J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Louis L. Kelley, Asst. Atty. Gen., Earl August Hauck, Denver, for respondents.
ENOCH, Judge.
Petitioners, Dravo Corporation and Liberty Mutual Insurance Company, seek review of an order of the Industrial Commission granting claimant Donald R. Riddle a 25% general permanent disability award. We affirm the order.
On September 19, 1973, claimant, employed by petitioner Dravo Corp., suffered a myocardial infarction (heart attack) while shoring timber to support the roof of a *347 mine tunnel. Claimant filed a claim for workmen's compensation, which was disputed by his employer.
Hearings were held before a referee on January 28, 1974, and March 17, 1975. While evidence was introduced that claimant's family had a history of heart disease, all medical testimony and reports concluded that overexertion on the day in question was the immediate cause of the heart attack. A cardiologist testified at the March 17 hearing that the heart attack had produced a total occlusion of one of claimant's three coronary arteries, resulting in a loss of irreplaceable heart muscle. The doctor, in a letter to claimant's counsel, and later by testimony, estimated that claimant had suffered a 25% permanent disability. He further testified that this estimate was based on anatomical disability rather than functional disability.
The referee found the heart attack to have been employment-related and to have been caused by claimant's overexertion in the performance of his duties. Additionally, the referee found claimant to be functionally impaired, presently and permanently, specifically in the performance of his former job, and generally in the performance of heavy work. Specifically adopting the cardiologist's opinion, the referee awarded claimant 25% general permanent disability benefits, to the extent of $16,835. The Commission affirmed the referee's order and employer and its insurer seek review, contending that the permanent disability award was based upon insufficient evidence.
The Commission and claimant have challenged petitioner's right of review in this case on the basis of "improper statutory grounds." It is unclear from their brief whether they meant to raise a procedural issue, i. e., that petitioners have relied upon improper statutory grounds for review of the award, or a substantive issue, i. e., that petitioners have failed to establish proper statutory grounds necessary for appellate relief. If their claim was intended to relate to the procedural issue, we find no merit in the contention. Proceeding to the merits of the review, we necessarily address ourselves to the substantive issue.

I.
The first issue is whether an opinion relating to the extent of permanent anatomical disability can ever be utilized in evaluating the percentage of "general permanent disability" under § 8-51-108(1)(b), C.R.S. 1973. Petitioners cite Puffer Mercantile Co. v. Arellano, Colo., 546 P.2d 481, for the proposition that mere anatomical loss of an organ is not the measure of disability. That case cannot be cited for such a broad proposition. In Puffer, the court set aside a 1% permanent partial disability award which the Commission had granted to a claimant who had lost one testicle. The court found that, aside from potential emotional problems, the claimant therein had suffered neither industrial disability (loss of earning capacity) nor functional disability. The Puffer decision did not turn on the measure or degree of disability, but upon whether there existed a compensable permanent disability in the first place.
The concept of a compensable general permanent disability is not based upon one's present functional disability, but rather on the injury's impact upon one's earning capacity, present or future. Simpson & Co. v. Wheeler, 153 Colo. 480, 386 P.2d 976; Wierman v. Tunnell, 108 Colo. 544, 120 P.2d 638. See Puffer Mercantile Co. v. Arellano, supra.
Here, claimant has suffered a compensable general permanent disability. The referee found, as supported by substantial evidence, that claimant had suffered functional and industrial disability. The doctor's opinion regarding the anatomical loss of heart muscle was competent and relevant on the issue of loss of earning capacity. Testimony concerning the loss of irreplaceable heart tissue, while not necessarily relating to present functional ability, can relate to impairment of the longevity, or duration of claimant's earning capacity.
Another doctor testified that he instructed claimant not to engage in heavy work because of the inherent medical risk of a future attack. And, in response to the referee's question whether the restrictions *348 were imposed "because of some physical impairment that he has at this time or the possibility of future attack," the doctor answered, "I don't know you can separate one from the other." This doctor's fear of the possibility and the consequences of a future heart attack relates to the irreversible effect, as described by the cardiologist, of this heart attack on claimant's heart tissue.
Accordingly, affirming that claimant suffered compensable disability, we hold that estimates relating to anatomical loss of organs may well be relevant to the referee's determination of a permanent disability award. In certain circumstances, such as in this case, these estimates may function as guidelines in setting a reasonable percentage figure for permanent disability.

II.
The medical testimony was that 25% "reasonably represented" claimant's permanent disability. Petitioners contend that this allegedly equivocal estimate is insufficient evidence to establish the extent of claimant's disability. We disagree.
Even assuming this testimony to be somewhat equivocal there is still the evidence of the cardiologist's letter which stated without qualification that he estimated claimant "to have at least a 25% permanent disability." Furthermore, the testimony that 25% "reasonably represented" claimant's loss of heart muscle was admissible as competent evidence from which the referee, in part, could base his finding. Although the referee specifically adopted the cardiologist's estimate, it does not necessarily follow that he adopted the estimate without regard for other pertinent factors.
Section 8-51-108(1)(b), C.R.S.1973, lists other factors the referee should consider in making his award, i. e., "the general physical condition and mental training, ability, former employment, and education of the injured employee." The record indicates that claimant was 25, had been employed only in construction and mining, and probably received no greater than a high school education. While the referee did not explicitly refer to these factors in his findings of fact, a presumption exists that the referee considered and gave due weight to all factors enumerated in the statute. Holmstrom v. Public Service Co., 169 Colo. 439, 458 P.2d 77.
In summary then, we find the record does contain sufficient competent evidence to support the referee's findings, conclusions and award.

III.
Asserting that an opinion concerning the extent of one's permanent disability cannot be rendered until such time as claimant reaches his maximum level of improvement, petitioners claim that claimant, as found by the referee, did not achieve maximum improvement until January 2, 1974, and that therefore the cardiologist's opinion based upon an October 1973 examination was incompetent. This argument is specious. Claimant had suffered, by the October examination, the total occlusion of one of three coronary arteries. And as testified by the cardiologist, a total occlusion of a coronary artery has an irreversible effect on heart muscle tissue. This irreversible effect was the basis for the cardiologist's estimate of permanent disability.
Claimant's condition was found to have reached maximum improvement on January 2, 1974, merely because the temporary chest pains accompanying the heart attack had receded. However, the long lasting effect of the heart attack, i. e., the loss of heart muscle, was determined prior to the October 1973 medical examination. Therefore, for purposes of estimating a percentage disability resulting from heart damage, claimant had reached his maximum level of improvement by October 1973, and the cardiologist's opinion on claimant's disability as of that date was competent testimony.
Order affirmed.
COYTE and STERNBERG, JJ., concur.