Lloyd D. COLLINS, Petitioner,

v.

The INDUSTRIAL COMMISSION of the State of Colorado, Charles McGrath, Executive Director, Department of Labor and Employment, State Compensation Insurance Fund, and Shasta Electric, Inc., Respondents.

No. 83CA0234.

Colorado Court of Appeals, Div. II.

Feb. 2, 1984.

Reams, Kaye & Alvillar, Bruce J. Kaye, Grand Junction, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Timothy Arnold, Asst. Atty. Gen., Denver, for respondent Indus. Com'n of Colorado.

Paul Tochtrop, William J. Baum, Denver, for respondents State Compensation Ins. Fund and Shasta Elec., Inc.

PIERCE, Judge.

Claimant, Lloyd D. Collins, seeks review of a final order of the Industrial Commission awarding him workmen's compensation benefits based upon a scheduled disability rating and denying him additional temporary total disability benefits. We affirm.

Claimant was employed between 1965 and 1976 as a union journeyman carpenter. During this period he travelled to various locations away from his home where union carpentry jobs were available. On March 29, 1976, claimant suffered a rotator cuff tear of the left shoulder in an industrial

accident for which liability was admitted. An extensive period of temporary total disability and attempts at vocational rehabilitation followed.

On June 26, 1981, the State Compensation Insurance Fund filed a special admission admitting liability for temporary disability from basically the date of claimant's injury until June 15, 1981. The Fund also admitted a scheduled disability rating of a five percent loss of the use of the left arm at the shoulder. The admission stated that it would be approved by the director unless claimant filed a notice of contest within 30 days.

Claimant timely filed a notice contesting the admission. At the hearing on the contested admission, the matter was held in abeyance because the parties were exploring the possibility of additional vocational rehabilitation.

Rehabilitation efforts commenced again in November 1981, and he received on-the-job training as an oil rig driller. On December 10, 1981, the Fund filed a revised special admission augmenting its previous admission of liability for temporary total and scheduled disability benefits to include liability for rehabilitation maintenance benefits from November 23, 1981, until the completion of vocational rehabilitation. *See* § 8–49–101(1)(a), C.R.S. (1983 Cum. Supp.). Claimant once again filed a notice of contest.

Following completion of the rehabilitation plan, a hearing was held on the contested issues. The referee found that, at the time of claimant's injury, he was earning $7.65 per hour and that, as of February 1982, the union scale for a journeyman carpenter, including all benefits, was $15.32 per hour. The referee noted, however, that while the evidence established that claimant had maintained temporary living quarters away from home during his employment as a union carpenter, there was neither evidence establishing the cost of maintaining a temporary residence away from home, nor was there evidence of the number of weeks per year claimant actually worked. The referee further found that

claimant had completed his vocational rehabilitation plan and was employed as a driller earning $6 per hour. In addition, his present employer was in the process of acquiring an additional drilling rig and, when acquired, claimant would earn $9 to $11 per hour. The referee also noted that claimant had demonstrated considerable mechanical skill and that, as part of the rehabilitation plan, he was provided with a set of tools valued at $2,700, factors which made claimant a more attractive employee for a drilling crew.

The referee also considered medical reports from a treating physician, and the surgeon who operated on claimant's shoulder in August 1980. In a report dated April 30, 1980, the treating physician recommended that the case be closed and claimant's impairment rated. He noted that he had made the same recommendation in December 1977 and had given claimant a disability rating at that time of five percent of the upper left extremity as measured at the shoulder. The surgeon, in a report dated February 17, 1981, characterized claimant's condition as "certainly functional now since his pain is almost gone," recommended that claimant be retrained for lighter work not requiring heavy stress on the shoulder, and indicated that claimant could do any type of light work and not be limited. In a letter dated March 25, 1982, the surgeon declined to give claimant a working unit disability rating, stating that "[d]ue to his subjective findings of pain and nothing really is objectively found, the 3% upper extremity loss is all I can give the patient."

Relying on the physician's testimony, that claimant had reached maximum medical improvement before June 19, 1981, the referee concluded that claimant was not entitled to temporary total disability benefits beyond that date, which was the date the Fund ceased paying such benefits. The referee also declined to award claimant a working unit disability rating, stating:

"The claim for permanent partial disability predicated upon the loss of earning capacity as demonstrated by the wages

he would earn as a union carpenter today and the wages he is earning as a driller in his current occupation is grounded in speculation and conjecture. It requires more than evidence of hourly wage to determine what the claimant's earning capacity would have been had he not been injured. The evidence did not disclose extra living costs incurred by the claimant in order to achieve that wage nor did the evidence disclose the number of hours the claimant actually would work over a given period of time. Therefore, there is no reasonable yardstick by which impairment of earning capacity based upon loss of wages can be measured."

Accordingly, the referee approved the Fund's December 10, 1981, special admission. The Commission made findings in accord with the referee's findings and affirmed.

### I.

Claimant first contends that the Commission erred in awarding him benefits based on a scheduled disability rating as opposed to a disability rating as a working unit. We disagree.

■ The Commission has discretion in determining whether to award benefits under either § 8–51–104(7), C.R.S., the scheduled disability provision, or § 8–51–108, C.R.S. (1983 Cum.Supp.), the permanent partial disability provision. *See World of Sleep, Inc. v. Davis,* 188 Colo. 443, 536 P.2d 34 (1975). An award of permanent partial disability requires a finding that claimant's injury has resulted or will result in an impairment of his earning capacity. *See American Metals Climax, Inc. v. Cisneros,* 195 Colo. 163, 576 P.2d 553 (1978); *Dravo Corp. v. Industrial Commission,* 40 Colo.App. 57, 569 P.2d 345 (1977). *See also Vail Associates, Inc. v. West,* 661 P.2d 1187 (Colo.App.1982) (*cert. granted* April 18, 1983). And, consideration of post-injury earnings may well be relevant in determining impaired earning capacity. *See Evans v. Aurora Elevator Co.,* 631 P.2d 1201 (Colo.App.1981). However, "actual post-in-

jury earnings do not always accurately reflect a worker's true earning capacity subsequent to his injury." *Evans v. Aurora Elevator Co., supra.*

■ The claimant bears the burden of proof to establish his right to benefits. *See Matthews v. Industrial Commission,* 627 P.2d 1123 (Colo.App.1980). While a strict comparison of hourly wage rates, to the exclusion of other relevant information, might indicate a loss of earning capacity, such may not be the case. Occasional employment at a high rate of pay may well reflect less earning capacity than steady employment at a lower rate of pay.

■ Here, prior to his injury claimant travelled to various locations away from his home in search of union carpentry jobs. The referee and Commission found that comparative evidence of hourly wage rates was insufficient, standing alone, to establish that claimant's injury resulted in a loss of earning capacity. The determination that claimant failed to meet his burden of proof is consistent with the evidence in the record and we are, therefore, not at liberty to disturb it. *See Matthews v. Industrial Commission, supra.* Accordingly, the Commission did not abuse its discretion in awarding claimant benefits for a scheduled disability.

### II.

■ Claimant also contends that he is entitled to temporary total disability benefits for the period between June 15, 1981, the date the Fund terminated payment of such benefits, and November 23, 1981, the date he began receiving rehabilitation maintenance payments, and that the Commission erred in denying those benefits. We disagree.

Relying on §§ 8–51–101(1) and 8–51–102, C.R.S. (1983 Cum.Supp.), claimant argues that disability benefits are to be paid "unless otherwise ordered by the director." We agree with claimant that the statute does not contemplate the unilateral termination of payment of benefits by the insurer. *Cf. Vargo v. Colorado Industrial*

*Commission,* 626 P.2d 1164 (Colo.App. 1981). This conclusion is supported by Industrial Commission Regulation VI, which governs the suspension, modification, and termination of payment of benefits. *See* 7 Code Colo.Reg. 1101–3 at 2. This regulation contemplates the filing of a petition to suspend or terminate temporary total disability benefits and the expeditious scheduling of a hearing on such request. However, our agreement with claimant's procedural argument does not necessarily entitle him to the requested benefits.

 The regulation also provides that: "If compensation is suspended without the Division's approval, compensation subsequently found to be due will bear interest at the rate of eight percent ... per annum during the period of unauthorized suspension."

Accordingly, the claimant is provided with a remedy in the event an unauthorized suspension or termination is subsequently found to have been improper.

Here the Commission found, however, that claimant had reached maximum medical improvement sometime before June 15, 1981, and had worked "part-time," according to claimant's testimony, in the period between June and November 1981, thereby precluding an award of temporary total disability during that period. *Cf. Morrison v. Clayton Coal Co.,* 116 Colo. 501, 181 P.2d 1011 (1947) (claimant awarded temporary total disability benefits until he reached maximum degree of improvement).

This finding is supported by the evidence and is therefore binding on review. *See American Metals Climax, Inc. v. Cisneros, supra.* Accordingly, claimant is not entitled to temporary total disability benefits during the period between June 15, 1981, and November 23, 1981.

Order affirmed.

SMITH and BABCOCK, JJ., concur.