**SKI DEPOT RENTALS, INC.,**
· **Petitioner,**

**v.**

**Anne S. LYNCH, the Industrial Commission of the State of Colorado, Charles McGrath, Director of the Colorado Division of Labor, Respondents.**

**No. 84CA1414.**

Colorado Court of Appeals,
Div. I.

Nov. 21, 1985.

Rehearing Denied Dec. 19, 1985.

Certiorari Denied (Ski Depot)
Feb. 24, 1986.

Lynn W. Toedte, P.C., Lynn W. Toedte, Denver, for petitioner.

Glasman, Jaynes & Carpenter, Ronald C. Jaynes, Susan D. Steninger Knisley, Denver, for respondent Anne S. Lynch.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Kathryn J. Aragon, Asst. Atty. Gen., Denver, for respondents Indus. Com'n and Charles McGrath.

KELLY, Judge.

Ski Depot Rentals, Inc. (employer) seeks review of a final order of the Industrial Commission awarding claimant, Ann S. Lynch, temporary partial disability and permanent partial disability of nine percent as a working unit. The employer argues that the findings were not supported by substantial evidence, and that it was denied due process. We affirm.

Claimant was employed as a "soft ware" manager and buyer at the employer's retail ski shop. She injured her left knee on July 8, 1981, and the employer admitted liability. The knee injury necessitated two surgeries, which included an arthroscopy and "reconstruction of [the] medial retinaculum and lateral release" on July 18, 1981. Subsequently, on December 12, 1981, an "arthroscopic debridement" was performed in order to remedy persistent "clicking" in the knee.

On July 8, claimant was earning $1,400 per month as a manager-buyer. She also received bonuses, medical insurance, and a season ski pass. Additionally, claimant had just commenced operation of a condominium cleaning business known as "Bunzup." However, claimant did not begin receiving income from Bunzup until later.

Claimant remained with the employer until September 25, 1981, when she was terminated for allegedly inadequate performance. Thereafter, she was self-employed in the Bunzup enterprise until July 1982. During this period claimant was under medical restrictions against climbing stairs, prolonged standing, and lifting. Consequently, claimant's activities in Bunzup were usually limited to bidding jobs, inspecting, purchasing, and doing laundry. However, claimant occasionally performed physical labor. Claimant's income from Bunzup during this time was considerably less than $1,400 per month, and she worked very long hours.

In July 1982, claimant was released from care by her orthopedic surgeon. The surgeon stated that claimant still suffered from "some crepitation" of the patella and some lost motion, and that she might suffer occasional problems restricting her job choices. The surgeon opined that claimant has suffered "permanent partial impairment" of 5 percent as a "body unit based on 15 percent impairment of her knee." The employer's examining physician rated claimant's disability as 15 percent at the knee.

Following her release, claimant was hired as a real estate agent at the Silver Creek resort, and subsequently became a sales representative for the Silver Creek Ramada Inn. By January 1982 her Silver Creek salary was $1,015 per month. Together with her Bunzup activities, claimant reported earnings ranging from $1,187 to $2,274 for the period from November 1982 through March 1983.

It is of further significance that claimant was twenty-two years old on the date of injury. She had a high school education plus three and one half years of college towards a degree in exercise physiology. Claimant testified that, as a result of her injury, she had abandoned any hope of pursuing a career in exercise physiology because she would be unable to lift patients and manipulate their extremities.

Based on the foregoing, a referee entered an order on January 17, 1984, finding that claimant was entitled to temporary partial disability payments between December 1981 and July 1982. Further, the referee held that claimant was entitled to per-

manent partial disability based on nine percent as a working unit.

The referee issued a supplemental order on October 5, 1984, which corrected certain typographical errors in the January order. The October order also recognized that the referee had not conducted the initial hearing, though she had conducted the second one. The referee stated that she did not read the transcript of the initial hearing prior to issuing the January order, and that she had now done so. She reaffirmed the findings and conclusions of the January order, stating that reading the transcript of the initial hearing did not "materially" change any portion of the January order. The Commission affirmed the findings and conclusions of the referee.

## I.

■ The employer first contends that there is insufficient evidence to support the finding that claimant suffers a disability of nine percent as a working unit. The employer argues that claimant did not suffer any loss of earning capacity because she could have resumed work as buyer, because she was earning more in 1983 than she did as a buyer, and because claimant did not have the requisite education or desire to pursue a career in exercise physiology. We disagree.

In assessing this argument we apply the rule that the Commission has wide discretion in determining the degree of disability. *American Metals Climax, Inc. v. Cisneros,* 195 Colo. 163, 576 P.2d 553 (1978); *In re Claim of Gilliatt v. Industrial Commission,* 680 P.2d 1310 (Colo.App.1983). Further, we presume that the Commission considered the relevant factors, and we will not set aside its conclusion if it is supported by substantial evidence in the record. Section 8–53–120, C.R.S. (1984 Cum.Supp.); *Dravo Corp. v. Industrial Commission,* 40 Colo.App. 57, 569 P.2d 345 (1977).

Here, the evidence revealed a demonstrable physical impairment which claimant's physician opined could cause her difficulty in the future. Further, the evidence indicates that the impairment hampered claimant's ability to perform the physical tasks necessary in her second job, the cleaning business. Such evidence in itself would support the Commission's findings.

Furthermore, the evidence supports the conclusion that the injury destroyed claimant's capacity for a career in exercise physiology. Admittedly, claimant had not completed her studies, nor pursued them recently. However, she had devoted considerable time to her studies and had practical experience as an athletic trainer. Considering the claimant's age, the Commission could infer that she had the capacity to complete her studies and work in the exercise physiology field, but the opportunity was lost because of the injury.

The fact that claimant might have been able to return to work as a buyer, or that her earnings equaled or surpassed those at the time of injury, does not change the result. As the supreme court noted in *Vail Associates, Inc. v. West,* 692 P.2d 1111 (Colo.1984):

> "reliance on actual wages as a presumptive measure of earning capacity could penalize a worker for making the best of his or her misfortune and, at the same time, result in a finding of no disability in spite of uncontradicted medical evidence of permanent impairment that substantially reduces the prospects of the worker's employment in the labor market."

Additionally, we perceive no abuse of discretion in the Commission's assessment of a nine percent working unit disability. The Commission was certainly not bound by the arguments of counsel, nor the medical assessments. *See Casa Bonita Restaurant v. Industrial Commission,* 624 P.2d 1340 (Colo.App.1981). Because the evidence supports the conclusions, the Commission's order is binding on review. *Ampex Corp. v. Industrial Commission,* 699 P.2d 980 (Colo.App.1985).

## II.

The employer next contends that the evidence does not support the finding that

claimant was entitled to temporary partial disability from December 1981 to July 1982. The employer argues that because claimant worked for Bunzup in excess of 40 hours per week during this period, she was not disabled. We reject this contention.

■ Section 8–51–103, C.R.S. (1985 Cum. Supp.) provides that in cases of "temporary partial disability, the employee shall receive sixty-six and two-thirds percent of the impairment of his earning capacity during the continuance thereof." Thus, disability is measured in terms of diminished earning capacity, not the ability or inability of claimant to work a given number of hours. *See State Compensation Insurance Fund v. Lyttle,* 151 Colo. 590, 380 P.2d 62 (1963) (decided under prior law).

■ Here, the evidence revealed that claimant's injury hampered her performance as the employer's manager-buyer. The employer moved her into sales until her termination. Subsequently, claimant worked for Bunzup under medical restriction. This employment resulted in an average weekly wage which was substantially lower than she earned while working for the employer. Consequently, the evidence supports the award of temporary partial disability.

### III.

The employer finally contends that it was denied due process of law because the referee who issued the January 17 order had not read the transcript of the first hearing. The employer argues that the referee's failure was damaging because of inconsistencies in claimant's testimony from the first hearing to the second. The inconsistencies included whether claimant had suffered previous injury to her knee, and the exact date that claimant started Bunzup.

■ It is true that due process requires the referee in a workmen's compensation case either to hear or read the evidence prior to issuing a decision. *State Compensation Insurance Fund v. Fulkerson,* 680 P.2d 1325 (Colo.App.1984). The referee in this case would have violated this principle if the January 17 order had stood alone.

■ Here, however, the referee issued a supplemental order after reading the transcript. The supplemental order was authorized because the employer had filed a timely petition to review the January 17 order. *See* § 8–53–111, C.R.S. (1985 Cum. Supp.). In our view, the referee's remedial action accorded the employer the fair hearing required by due process.

The fact that the referee did not change the January 17 order is not evidence of bias or prejudgment of the evidence. *See State Compensation Insurance Fund v. Fulkerson, supra.* The discrepancies in claimant's testimony cited by the employer are not major, nor are they central to the issues in the case. Under such circumstances, we decline to override the "presumption of integrity, honesty, and impartiality" which rests with the referee in this case. *Scott v. City of Englewood,* 672 P.2d 225 (Colo.App.1983).

Order affirmed.

PIERCE and BABCOCK, JJ., concur.