DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Ottawa County Court of Common Pleas which, following a jury trial, granted appellees, William and Linda Tasch, a new trial. This matter arose out of an automobile collision which occurred on or about April 11, 1995, between Mr. Tasch and Lori L. Chancey, appellant. Appellees sued Chancey and their underinsured motorists carrier, Ohio Farmers Insurance Company ("Farmers"). The jury awarded Mr. Tasch $75,000 for his injuries and awarded $15,000 to Mrs. Tasch on her consortium claim. Appellees filed a motion for new trial, pursuant to Civ.R. 59(A)(6), arguing that the jury failed to award damages for future medical expenses, pain and suffering. On November 29, 2000, the trial court granted appellees' motion and ordered a new trial.
Appellants appealed the trial court's November 29, 2000 judgment granting appellees a new trial. Farmers raises the following assignments of error:
 "1. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS BY APPLYING THE WRONG STANDARD IN GRANTING THE MOTION FOR A NEW TRIAL.
 "2. THE COURT BELOW ERRED TO THE PREJUDICE OF APPELLANT BY HOLDING THAT THE JURY'S AWARD OF DAMAGES WAS INADEQUATE, WITHOUT ANY FINDING OF PASSION OR PREJUDICE AS REQUIRED BY CIV. R. 59(A)(4)
 "3. THE COURT BELOW ABUSED ITS DISCRETION IN ORDERING A NEW TRIAL, AND ERRED TO THE PREJUDICE OF APPELLANT"
Additionally, Chancey raises the following assignments of error:
 "I. THE TRIAL COURT ERRED IN USING THE WEIGHT OF THE EVIDENCE STANDARD INSTEAD OF THE MANIFEST WEIGHT OF THE EVIDENCE STANDARD IN GRANTING PLAINTIFFS' MOTION FOR A NEW TRIAL.
 "II. THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING APPELLEES' MOTION FOR NEW TRIAL SINCE THERE WAS SUFFICIENT CREDIBLE EVIDENCE TO SUSTAIN A JUDGMENT UPON THE VERDICT OF THE JURY."
For the following reasons we reverse the decision of the trial court.
In its decision and judgment entry granting a new trial, the trial court held that Mr. Tasch's claimed injuries fell into two categories, permanent brain injury with resulting permanent psychological damage and knee injury followed by surgery and post-operation complications and permanent and disabling damage. The jury awarded $35,000 for past medical expenses and awarded amounts for past pain, suffering, inconvenience, and loss of quality of life, but awarded no amounts for any future damages. The trial court noted that there were past medical bills totaling approximately $89,000, of which only $16,342.15 related to head trauma diagnosis and treatment. As such, the trial court concluded that the remainder of the $35,000 awarded for past medical expenses was attributable to treatment of the knee injury and the resulting surgery and complications therefrom.
Based on the jury's award of past medical expenses, the trial court concluded that the jury must have determined that the knee injury was proximately caused by the collision. Because all the medical experts testified that Mr. Tasch suffered permanent physical impairment of his knee, the trial court held that the jury's verdict, awarding nothing for future damages, was not sustained by the weight of the evidence. Significantly, in granting a new trial based upon Civ.R. 59(A)(6), the trial court stated the following:
 "* * * The instant case is a Civ.R. 59(A)(6) case, i.e. weight of the evidence. Note that the rule does not speak to `manifest' weight of the evidence, but rather just `weight of the evidence.' Something is `manifest' when it jumps out of the record at you and is `obvious to the understanding', `unmistakable, indubitable, indisputable, evident and self evident". London Guarantee v. Coffeen, Colorado, 42 P.2d 998. This Court believes that Civ.R. 59(A)(6) admits of a more subtle interpretation and inquiry.
"The factual situation is this:
 "1. In order to award past medical expenses in excess of $16,342.15 the jury had to believe Doctors Nadaud, Morse and Karaffa and ignore Dr. Peebles testimony.
 "2. In order to conclude that the knee injury was caused by the accident the jury had to believe Doctors Nadaud, Morse and Karaffa and ignore Dr. Peebles.
 "3. In order to deny future medical damages the jury had to reject the testimony of Doctors Nadaud, Morse and Karaffa, reject the testimony of Dr. Peebles on the issue of permanency and adopt Peeble's testimony on the issue of proximate causation. This is not the typical case of the jury simply choosing between experts, but rather the jury believing all experts on the issue of permanency, believing all but one expert on the issue of proximate cause and then believing only that one witness on the issue of future medicals, rejecting all other testimony.
 "The Court believes this to be a judgment `not sustained by the weight of the evidence.' It is justly concluded and apparent from the verdict herein `. . . that the jury failed to include all the items of damage making up the Plaintiffs claim . . .' and the inadequacy of the verdict is such as to shock the sense of justice and fairness. Sherer v. Smith
(1949), 85 Ohio App. 317 and Rybaczewski, et al v. Kingsley, et al (1998), Ohio App. Lexis 1694, C.A. Lucas, L-97-1048."
At issue in this case is whether the trial court applied the correct standard in granting a new trial. Farmers raises two types of arguments: (1) that the trial court had to find that the jury's award was given under the influence of passion or prejudice, as required by Civ.R. 59(A)(4); and (2) that the trial court had to find that the verdict was against the manifest weight of the evidence, not merely the weight of the evidence. Chancey also asserts that the trial court erred in not finding that the verdict was against the manifest weight of the evidence. Both appellants additionally argue that under the manifest weight of the evidence standard, the trial court abused its discretion in granting a new trial.
Civ.R. 59 specifies the reasons for which the trial court may grant a new trial. Civ.R. 59(A) states in relevant part:
 "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
"* * *
 "(6) The judgment is not sustained by the weight of the evidence * * *."
It is well-settled that, "[i]n an action for damages for personal injury, a verdict should not be set aside unless the damages awarded are so excessive as to appear to have been awarded as a result of passion or prejudice, or unless it is so manifestly against the weight of the evidence as to show a misconception by the jury of its duties in the premises."[1]
In this case, the trial court granted a new trial on the basis of Civ.R. 59(A)(6). In determining whether a new trial is warranted because the verdict is against the weight of the evidence, the trial court "must weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of theevidence." (Emphasis added.)[2] According to the Ohio Supreme Court, the trial court was required to find that the verdict was against themanifest weight of the evidence, not merely "weight of the evidence" as the trial court suggests.[3] We therefore find that the trial court erred as a matter of law in finding that something less than a verdict against the manifest weight of the evidence would warrant a new trial pursuant to Civ.R. 59(A)(6).[4] Appellants' first assignments of error are therefore found well-taken.
Farmers alone argues in its second assignment of error that in order to grant a new trial due to inadequate damages, the trial court was required to find passion or prejudice, as set forth in Civ.R. 59(A)(4). In ruling on the motion for new trial, the trial court noted that this was a Civ.R. 59(A)(6) case, not a Civ.R. 59(A)(4) case, and therefore was not required to find passion or prejudice. We agree with the trial court. We have previously stated that "the authority and scope of a trial court to grant a new trial on the weight of the evidence pursuant to Civ.R. 59(A)(6) is equally applicable to damage awards, and is not limited by the `passion or prejudice' language of Civ.R. 59(A)(4)."[5]
Accordingly, we find Farmers' second assignment of error not well-taken.
Farmers argues in its third assignment of error and Chancey argues in her second assignment of error that the trial court abused its discretion in awarding a new trial. As noted above, the trial court incorrectly stated that it was not necessary to find that the verdict was against themanifest weight of the evidence before granting a new trial pursuant to Civ.R. 59(A)(6). However, the trial court also found that "the jury failed to include all the items of damage making up the Plaintiffs claim" and that "the inadequacy of the verdict is such as to shock the sense of justice and fairness." Both of these findings are factors to consider when granting a new trial.[6] As such, we will review the merits of the trial court's decision granting a new trial.
The granting or denial of a motion for new trial rests within the discretion of the trial court and will not be overturned on appeal absent a showing that the trial court abused its discretion.[7] The trial court has "a wide latitude of discretion in granting a new trial" when it finds that the jury's verdict results in a manifest injustice.[8]
"Absent clear evidence that the trial court acted unreasonably, unconscionably, or arbitrarily and rendered a decision which was clearly wrong and without legal basis, the trial court's decision must be affirmed."[9]
Where the trial court's decision granting a motion for new trial involves questions of fact, a reviewing appellate court "should view the evidence favorably to the trial court's action rather than to the original jury's verdict."[10] This rule is "predicated, in part, upon the principle that the discretion of the trial judge in granting a new trial on the weight of the evidence may be supported by his having seen and heard the witnesses and having formed a doubt as to their credibility, or having determined from the surrounding circumstances and atmosphere of the trial, that the jury's verdict resulted in manifest injustice."[11]
In determining whether a new trial should be granted pursuant to Civ.R. 59(A)(6), a trial court may consider whether the verdict resulted from the jury's failure to consider an element of damages that was established by uncontroverted evidence,[12] whether the verdict cannot be reconciled with the undisputed evidence in the case,[13] or whether the verdict is so gross as to shock the sense of justice and fairness.[14] The trial court, however, "may not set aside a verdict upon the weight of the evidence upon a mere difference of opinion between the court and the jury."[15] The trial court also "should abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result."[16] Moreover, a new trial may not be granted where the verdict is supported by competent, substantial and apparently credible evidence.[17]
In this case, the trial court granted a new trial on the bases that the jury failed to consider an element of damages that was established by uncontroverted expert testimony and that the verdict was so inadequate as to shock the sense of justice and fairness. The trial court's decision was not based on credibility of the witnesses, rather, its decision was based solely upon the following rationale:
 "* * * It is clear from the evidence that total past medicals were approximately $89,000 in all categories of which only $16,342.15 related to head trauma and the resulting diagnosis and treatment. The balance of the $35,000 award would a fortiori be all allocated to treatment of the knee injury, the resulting surgery and complications therefrom."
Because all experts testified that Mr. Tasch suffered from permanent debilitating injury to his left knee, the trial court concluded that the jury erroneously failed to award future damages. We find, however, that the trial court's analysis ignores relevant testimony that the jury could have considered in awarding no amount for future damages.
Specifically, Dr. Bradley Morse, Mr. Tasch's orthopedic surgeon, testified that Mr. Tasch's knee problems consisted of two types of injuries, osteochondritis desiccans and a meniscal tear. Dr. Morse testified that, within a medical degree of probability, the osteochondritis desiccans was caused by a direct hit to Tasch's knee, such as what occurred in the accident with Chancey. Appellees' expert, Dr. Richard Peebles, however, disagreed that the osteochondritis desiccans was caused by the April 11, 1995 collision, insofar as Mr. Tasch voiced no significant complaints regarding his knee until March 1998. With respect to the meniscal tear, however, the experts agree that a direct frontal hit to the knee does not cause a meniscal tear. As such, there is no dispute that the meniscal tear, in fact, was not caused by the collision with Chancey.
According to Dr. Morse, osteochondritis desiccans occurs when there is "a certain amount of force directed to a small area." This force causes the underlying bone which supports the cartilage to be damaged to the point where the blood supply is compromised. Without proper blood supply, the area "potentially can die or be damaged sufficiently enough where you can't support the overlying structures." Dr. Mark Nadaud, Mr. Tasch's primary care physician, described osteochondritis desiccans as a degenerating inflammatory condition of the pedicle, the weight bearing portion of the knee.
Also according to Dr. Morse, the meniscal tear from which Mr. Tasch suffered, as opposed to the osteochondritis desiccans, caused Mr. Tasch's knee to buckle, making him fall. Osteochondritis desiccans would only cause this effect if there was the presence of cartilage floating around within the knee; there was none found during surgery. According to Dr. Peebles, a meniscal tear is caused by abuse to the knee, either by an acute tear, due to the knee twisting, or by a degenerative process, such as is caused by carrying excessive weight for a prolonged period of time.
Mr. Tasch underwent arthroscopic surgery in February 1999 for his knee problems. During surgery, with respect to the osteochondritis desiccans, Dr. Morse discovered loose articular cartilage, which he removed. Beneath that area was exposed bone, the cause of arthritis. Dr. Morse attempted to stimulate the bone to bleed and, thereby, form scar tissue over the exposed bone to mitigate the arthritic symptoms. He also repaired the tear in the meniscus on the medial, on the back of the knee. Following surgery, Mr. Tasch developed a severe staphylococcus infection. His blood stream was infected, he had an infection in his knee, he got a bone infection, osteomyelitis, and developed blood clots in his veins, including a pulmonary embolism. As a result of these severe and long-term infections, it is undisputed that Mr. Tasch has permanent debilitating damage, including septic arthritis and venous insufficiency. The venous insufficiency, which is a problem with blood circulation, was caused by blood clots that formed in Mr. Tasch's veins, due to the infection in his blood stream. The clotting in the veins later caused recurrent ulcerations of the lower legs.
Despite the fact that Mr. Tasch's injuries are permanent, there is sufficient evidence upon which the jury could have relied in determining that he was not entitled to future damages. Specifically, the record is replete with references to Mr. Tasch's severe obesity. Mr. Tasch was between one hundred twenty and one hundred thirty pounds overweight for over seventeen years prior to his knee surgery. All the doctors agree that Mr. Tasch's weight can be a contributing factor to both his arthritis and venous insufficiency. Specifically, Dr. Nadaud agreed that excessive weight can cause "degenerative changes," "can have very serious consequences with respect to a person's health," including strains of the joints, especially the knees, and that "the pressure of excess weight on the knee, the pounding pressure of walking and running and so on, can greatly aggravate a knee problem." Moreover, Dr. Nadaud agreed that a person so grossly obese as Mr. Tasch "can develop knee problems with the sheer amount of bulk or excess weight they are carrying on their frame." Additionally, Dr. Morse testified that excessive weight is one of the mechanisms that places stress on the joints of the body, including the knees:
 "Fairly common sense. The more weight that you have, the more stress you are placing on your joints, and therefore, joints respond to stress with early wear, i.e. arthritis."
Dr. Morse also testified that the period of time Mr. Tasch weighed in excess of three hundred pounds was sufficient to result in some early degeneration of his knee joints due to wear and tear. Finally, Dr. Camille Karaffa, an infectious diseases physician, testified that there is some relationship between venous insufficiency and obesity. Furthermore, Karaffa testified that weight reduction would be one of the avenues of treatment for venous insufficiency.
Based on the foregoing testimony, we find that the evidence was not uncontroverted that Mr. Tasch's permanent injuries were proximately caused by the April 11, 1995 collision with Chancey. In fact, it is clear from the evidence that Mr. Tasch's primary complaint necessitating his arthroscopic surgery was the fact that his knee kept buckling, causing him to fall. The evidence clearly establishes that this buckling, caused by a meniscal tear, was in no way related to the collision in this case. Consequently, even if the jury believed that part of the arthroscopic surgery was necessitated by the collision, it is not "uncontroverted" that the resultant problems with the surgery were directly related to the April 11, 1995 collision. There is sufficient and arguably competent evidence to support a finding by the jury that Mr. Tasch's long-term obesity, rather than the 1995 collision, contributed to, and even caused, his permanent problems with arthritis and venous insufficiency.
Moreover, we note that the trial court erred in concluding that if the jury believed doctors Nadaud, Morse, and Karaffa, with respect to the proximate causation between the collision and the knee surgery, that the jury was required to accept that the permanency of Mr. Tasch's injuries were also proximately caused by the collision. This analysis by the trial court is contrary to law. "Even where the jury is presented with uncontroverted evidence, it may choose to disregard any or all of the evidence."[18]
Accordingly, we find that the verdict was not against the manifest weight of the evidence and did not result in a manifest injustice. Although the experts concurred that Mr. Tasch suffered permanent, debilitating injury to his knee, there was ample other evidence upon which the jury could have relied to find that the collision did not cause Mr. Tasch permanent injury. As such, we find that the jury's verdict can be reconciled with the evidence presented in the case. Additionally, insofar as the jury's verdict was supported by competent, substantial and apparently credible evidence, we find that the jury's verdict was not seriously erroneous. Based on the foregoing, we find that the trial court abused its discretion in granting a new trial because its findings are unreasonable, insofar as they are contrary to the evidence presented, clearly erroneous, and without legal basis.[19] We further find that the trial court abused its discretion in substituting its own opinion and analysis of the controverted evidence for that of the jury's.[20] Accordingly, we find Farmers' third assignment of error and Chancey's second assignment of error well-taken.
On consideration whereof, the court finds substantial justice has not been done the party complaining and the judgment of the Ottawa County Court of Common Pleas is reversed. This matter is remanded to the trial court for reinstatement of the jury's verdict. Costs of this appeal to be paid by appellees.
 JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J., and Mark L. Pietrykowski, P.J., CONCUR.
[1] Toledo, Columbus Ohio River RR. Co. v. Miller (1923),108 Ohio St. 388, paragraph three of the syllabus.
[2] Rohde v. Farmer (1970), 23 Ohio St.2d 82, paragraph three of the syllabus.
[3] See Id.
[4] See Roe v. Heim (Dec. 8, 1999), Summit App. No. 19432, unreported.
[5] Hendrickson v. Maenle (Dec. 20, 1991), Lucas App. No. L-90-366, unreported. See also, Krauss v. Daniels (June 30, 1999), Wood App. No. WD-98-076, unreported; and Hartsel v. Mills (Mar. 17, 1995), Wood App. No. WD-94-81, unreported.
[6] See Pena v. Northeast Ohio Emergency Affiliates, Inc. (1995),108 Ohio App.3d 96, 104; and Veal v. Troxel (July 7, 1999), Summit App. No. 19184, unreported.
[7] Steiner v. Custer (1940), 137 Ohio St. 448, paragraph one of the syllabus.
[8] Rhode, supra at 93.
[9] Dawson v. MetroHealth Ctr. (1995), 104 Ohio App.3d 654, 655. See, also, Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[10] Rhode at 94, citing 5 American Jurisprudence 2d 326, Section 887. See, also, Mannion v. Sandel (2001), 91 Ohio St.3d 318, 322, and Jenkinsv. Krieger (1981), 67 Ohio St.2d 314, 320.
[11] Id.
[12] Pena at 104, citing, Dillon v. Bundy (1992), 72 Ohio App.3d 767,773.
[13] Bailey v. Allberry (1993), 88 Ohio App.3d 432, 435.
[14] Id.
[15] Rhode, supra at 92, citing Poske v. Mergl (1959), 169 Ohio St. 70,73.
[16] Santoli v. Marbuery (May 14, 1998), Cuyahoga App. No. 72110, unreported, citing, Bland v. Graves (1993), 85 Ohio App.3d 644,651.
[17] Dillon, supra at 773-774, citing Hancock v. Norfolk Western RY.Co. (1987), 39 Ohio App.3d 77, 81, and Verbon v. Pennese (1982),7 Ohio App.3d 182, 183.
[18] Pavon v. Schick (Mar. 17, 2000), Lucas App. No. L-99-1055, unreported, citing, Bailey v. Emilio C. Chu, M.D., Inc. (1992),80 Ohio App.3d 627, 634.
[19] See Steiner, 137 Ohio St. 448, paragraph four of the syllabus. See, also, Dawson 104 Ohio App.3d 654, 655; and Blakemore,5 Ohio St.3d 217, 219.
[20] See Rhode, 23 Ohio St.2d 82, 92.